### ATLANTA–NEW ORLEANS MOTOR FREIGHT CO., et al., Complainants,

### v.

### UNITED STATES of America and The Interstate Commerce Commission, Defendants.

### Civ. A. 4568.

United States District Court
N. D. Georgia,
Atlanta Division.
Aug. 10, 1953.

26. See letter of July 22, 1957.

Reuben G. Crimm and Allen Watkins, Atlanta, Ga., Edgar Watkins, Washington, D. C., for complainants.

Edward M. Reidy and Isaac K. Hay, Interstate Commerce Commission, Washington, D. C., for defendants.

Before RUSSELL, Circuit Judge, HOOPER, Chief Judge, and SLOAN, District Judge.

HOOPER, Chief Judge.

This action was brought on April 22, 1953 by nine motor common carriers holding certificates of convenience and necessity,[1] to set aside an order entered February 16, 1953 by the Interstate Commerce Commission which granted a certificate of public convenience and necessity to Malone Freight Lines, Inc., hereinafter referred to as Malone.[2] Interventions were filed and allowed in behalf of certain competing railroads[3] and other motor common carriers,[4] all joining in the prayers of plaintiffs' petition. Malone Freight Lines, Inc., on its own motion, was made a party defendant, and various textile mills (shippers) intervened as defendants.[5] Arguments were had before this three-judge court on June 23, 1953, and helpful briefs filed by all counsel.

A summary of the proceedings in this matter before the Commission is as follows:

Malone filed with the Commission on August 2, 1948 his application for a certificate authorizing operation as a common carrier by motor vehicles of textiles, textile products and other related articles, over irregular routes between Alabama and Georgia on the one hand, and on the other, points including North Carolina, South Carolina, Virginia, West Virginia, Delaware, Maryland, New Jersey, Pennsylvania, New York, Massachusetts, Rhode Island, and Connecticut.

Hearings were had before an examiner who recommended that the application be denied. Upon exceptions filed thereto by Malone, Division 5, comprised of three commissioners, on April 30, 1952 granted a portion of authority sought. Complainants and others filed a petition for reconsideration, the matter was reopened November 3, 1952 and submitted to the entire Commission which, on February 16, 1953, by majority vote of six members (four dissenting, one being absent) found that the application should be granted in part. Accordingly, the Commission vacated the order of April 30, 1952 entered by Division 5 and entered the order herein complained of, being the same as the order granted by Division 5 with only slight modifications.

1. Atlanta-New Orleans Motor Freight Co., Georgia Highway Express, Inc., Akers Motor Lines, Inc., Pilot Freight Carriers, Inc., Carolina Freight Carriers Corporation, Johnson Motor Lines, Inc., Thomas G. Griggs, Otis C. Brigman and Jerry C. Griggs, d/b/a Griggs Trucking Co., Jack Cole Company, Inc., and Cooper Motor Lines, Inc.

2. It is brought pursuant to Title 28, Sections 1336, 2284 and 2321–2325 of the United States Code.

3. Alabama Great Southern Railroad Company (The), Atlanta and West Point Railroad Company, Atlantic Coast Line Railroad, Baltimore & Ohio Railroad Company (The), Central of Georgia Railway Company, Cincinnati, New Orleans & Texas Pacific Railway Company (The), Georgia Railroad, Gulf Mobile and Ohio Railroad, Illinois Central Railroad, Louisville & Nashville Railroad Company, New York, Ontario and Western Railway, Norfolk and Western Railway, Pennsylvania Railroad Company (The), Pennsylvania-Reading Seashore Lines, Reading Company, Seaboard Air Line Railroad Company, Southern Railway Company, Wabash Railroad Company, Western Maryland Railway and Western Railway of Alabama (The).

4. Consisting of McLean Trucking Company, Roadway Express, Inc., a corporation of the State of Ohio, Dixie Ohio Express Co., a corporation of the State of Alabama, Bowman Transportation, Inc., successor to Ralph M. Bowman, d/b/a Bowman Transportation Co., a corporation of the State of Alabama, and Atlanta-Asheville Motor Express, Inc., Brown Transport Corp., (formerly Augusta-Atlanta Motor Express, Inc.), R. C. A. Truck Lines, Inc., B. C. Truck Lines, Inc., LaGrange Truck Lines, Inc., Benton Rapid Express and Atlanta-Columbus-Albany Motor Lines Incorporated.

5. These shippers include West Point Manufacturing Company, Columbus Manufacturing Company, Dixie Mills, Inc., Bibb Manufacturing Company (little affected by the order as finally passed) and Georgia-Alabama Textile Traffic Association, an organization whose membership includes approximately fifty large textile products establishments in Georgia and Alabama.

The order herein complained of issues to Malone Freight Lines, Inc. a certificate of convenience and necessity allowing it to transport:

"textiles and textile products, from points in Alabama within 125 miles of Montgomery, Ala., including Montgomery, and points in Georgia within 125 miles of West Point, Ga., including West Point to points in Virginia, West Virginia, Delaware, Maryland, New Jersey, Pennsylvania, and those in New York on and south of a line beginning at Oswego and extending along U. S. Highway 104 to Mexico, thence along New York Highway 69 to Rome, thence along New York Highway 49 to Utica, thence along New York Highway 5 to Schnectady, thence along New York Highway 7 to Troy, and thence along New York Highway 2 to the New York-Massachusetts State line;"

On March 5, 1953 an extraordinary petition for consideration was filed, denied April 20, 1953, and this complaint then filed seeking to set aside the order of February, 16, 1953 above quoted.

### Grounds of Objections To Orders Granting Certificate

In Paragraphs IX to XVII inclusive, of the complaint, the protesting carriers set forth in detail the reasons why they allege this order is arbitrary, capricious and unlawful, their grounds of complaint being substantially as follows:

That the evidence before the Commission was not sufficient to show the need for the additional services offered by the applicants (see Paragraphs IX, XI, XIII and XIV), that the order of the Commission granting the certificate was based "upon the unreasonableness of certain rates on textiles and textile products, which are unidentified in said report, and the reasonableness of rates was not in issue in said case," (see Paragraph XVII) and was based on alleged rate stops which had been adopted by the objecting carriers and which could not under the law constitute a sufficient

ground for granting a certificate to Malone (see Paragraphs XII, XVII, XVIII). The contention that the order was based on evidence concerning rates is the one most earnestly insisted upon. It is also contended the Commission should not have considered a period of time during which Malone had operated without the scope of its authority (Paragraph XV), and that Malone's ability to comply with the certificate was not shown (see Paragraph XV). The order of the Commission is also criticized as failing to conform to provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), in that it fails to state pertinent findings, conclusions, or reasons for its decision (Paragraph XVI).

### The Order of The Commission Was Not Based On Rate Considerations.

It is quite true, as complainants insist, that the evidence before the Commission is replete with references to "rate restrictions", "minimum rates", and "rate stops". These expressions, it is explained by counsel for complainants, "merely refer to a level of rates or charges applicable to transportation of particular traffic, which rate levels or charges, because of the rate consideration factors involved, are higher than the use of classification ratings applied to a class rate scale." It is quite true, as complainants contend, that if the only complaint that the shippers (certain textile mills) had as to existing service concerned the matter of rates, there was available to them an administrative remedy whereby they could seek a change in such rates (see Interstate Commerce Act, Part II, § 216 (g), 49 U.S.C.A. § 316(g).

This court finds, however, that although the matter of rate stops, minimum rates and rate restrictions did figure prominently in the hearing before the Commission they were not directly involved therein, they were not the subject matter of the proceedings, and it appears that the Commission disclaimed that its order granting the certificate to Malone was based on rate considera-

tions (sheet 10 of the order). It also appears that there was sufficient evidence before the Commission, independent of evidence as to rates, to support the Commission's order.

A careful reading of the record in this case,[1] including the testimony given before the Commission by representatives of the textile mills, will disclose the difficulties which these mills, located in Alabama and in the western part of Georgia, were experiencing in their efforts to obtain reasonably prompt delivery to the eastern markets of their textile products, particularly in less than truckload lots; their inability to compete on equal terms with mills in North Carolina and South Carolina which had superior facilities of transportation to such markets; their difficulty in many instances in prevailing on carriers to accept certain shipments; and the necessity on occasion of tracing shipments misplaced on route. The following portion of the Commission's order seems to picture their difficulties:

"The complaints of these shippers about existing motor carrier service are similar in all important respects. Each uses motor carriers extensively and has to depend mostly on two and three-line service to reach many points in the destination territory. Each has to compete with mills in North and South Carolina, in markets located in Virginia, West Virginia, Delaware, Maryland, New Jersey, and New York, hereinafter called the eastern states. The mills located in the Carolinas have direct 48-hour single-line motor carrier service to many points in the eastern states and are thus able to reach these markets without delay. The experience of one shipper with existing service is that its shipments of towels moving in two-line service,

were being held up at Atlanta, Ga., the interchange points. This shipper presently uses one of the intervening motor carriers which provides direct service, but at the time of the hearing herein that carrier had placed an embargo on all shipments of less than 2,000 pounds. One shipper cannot compete with the mill at LaGrange, in markets in the eastern states, because this mill has had the advantage of applicant's direct service. The mill at Lanett has received satisfactory service from one of the intervening motor carriers to points served direct, or in two-line service to points in southern territory, but beyond southern territory rate stops have been used, and it has been difficult to find connecting carriers. Shipments are delayed on interline movements and are frequently located in the warehouses of the originating carrier. One shipper has experienced incidents which tend to establish that connecting carriers are not prone to accept its traffic. One of the intervening motor carriers suggested that its service be not used for shipments destined to points in the New England States. One shipper using two-line service is receiving seven-day service at Philadelphia and New York and longer to points beyond. The experience of another shipper has been that shipments to points in Pennsylvania must be interchanged either at Atlanta, Baltimore, or Philadelphia and the delays which have occurred make the service impractical. This shipper has shifted from carrier to carrier in an effort to find satisfactory service. Although one intervening carrier, used by this shipper, may serve Norristown, Pa., direct, shipments of less than 2,000 pounds were interchanged by this

1. In their comprehensive brief counsel for Malone document the testimony of each of the witnesses before the Commission produced by the mills upon the matter of complaints of the various shippers. The testimony of witnesses Harrell, Goodman,

Herring, Swanson, and some fifteen others is sufficient to sustain the findings of the Commission to the effect that the shippers were in need of additional facilities.

carrier. Another motor carrier provides satisfactory service to all points it serves direct, but it will not accept shipments of less than 10,000 pounds.

"The service of these carriers cannot be said to meet the requirements of the supporting shippers located in parts of Alabama and Western Georgia. An analysis of the operations of the 27 opposing motor carriers shows that only a few serve Alabama points and those that serve Georgia points mostly operate through or interchange their traffic at the congested Atlanta gateway. The fact that some of these carriers may, but do not serve, the supporting mills direct indicates that they would not be too adversely affected by applicant's proposed operations. One carrier with substantial operating rights had placed an embargo on all shipments less than two thousand pounds. All of this indicates that until the instant application was filed the existing carriers with widespread authority were not too concerned about the traffic."

As it appears that there was sufficient evidence before the Commission, independent of evidence concerning rates, to sustain its finding that additional services were needed, and it also appears that the Commission did not base its orders upon the question of rates, we have carefully considered the contentions of the complainants that their rights were violated by the injection of rate considerations into the case.

■ Complainants are insisting that not only their legal rights but their constitutional rights under the Fifth Amendment were violated by reason of this issue as to rates being injected into the hearing without sufficient advance notice thereof being given to them to meet this issue. As to this contention the Commission and Malone contend in their briefs that the first hearing in this matter was had before the trial examiner on January 18, 1949, the next hearing on April 19, 1949, and a subsequent hearing on September 26, 1949. The examiner filed his report on or about April 19, 1950. Complainants have made no sufficient showing that the matter of rate stops was so suddenly sprung on them without notice as to violate their legal or constitutional rights. The extent to which evidence of rate stops was used in the hearing could reasonably have been anticipated by complainants as likely to be adduced at the hearing.[2]

2. A similar contention to the effect that the Commission considered matters as to which complaining parties did not have proper advance notice was made in the case of United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, at page 526, 66 S.Ct. 687, 90 L.Ed. 821, where the court held that the Commission did not, by the manner in which it disposed of the cause, inject any new issue therein and that apparently it was in the minds of the parties that such an issue might be in the case.

To clarify our ruling as to evidence as to rate stops it appears there are two aspects of this question. (1) If the Commission in issuing this certificate to Malone based its order solely upon the ground that it considered the prevailing rates in effect by the objecting carriers to be excessive, we might be authorized to sustain the contentions of complainants and set aside the order upon the ground that the proper remedy of the shippers under those circumstances would be to attack such rates administratively, and not obtain relief through the issuance of a new certificate. That question is not here involved, however, for we have found that there was substantial evidence before the Commission supporting its order regardless of rate considerations, the latter being only a collateral issue illustrative of the surrounding circumstances. (2) There being other substantial evidence to support the order of the Commission, should we hold that evidence concerning such prevailing rates was improperly considered by the Commission, the question would then arise whether admission of such evidence was so prejudicial as to require the court to send the matter back for new consideration. It is now fairly well established that our system of rules of evidence concerning jury trials is not equally applicable to findings of fact by administrative tribunals (Wigmore on Evidence, Vol. 1, Sec. 48), but that feature of our law should not encourage administrative

### Evidence Based On Period Of Applicant's Unauthorized Operation

In Paragraph XV of the complaint it is alleged the order of the Commission of February 16, 1953 is unlawful in that evidence produced by applicant concerning its service in the territory involved was during a period in which the applicant was operating without the scope of its authority. The same question is raised in Paragraphs X and XIV of the complaint.

There is no doubt that the applicant during the period referred to did operate beyond the terms of the certificate which it then held. The Commission after a hearing so found and its finding was carefully and ably reviewed and affirmed by the United States District Court, Northern District of Alabama, Southern Division, in an opinion by Judge Lynne. See Malone Freight Lines, Inc., v. United States, 107 F.Supp. 946, that ruling having been affirmed by the United States Supreme Court, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712.

The Commission in this case found as a fact that such unauthorized operations by applicant were "conducted openly and with the honest belief that they were within the scope of its authority." Under such circumstances an objection to the course pursued by the Commission in taking into consideration the past operations of the applicant during such period in determining the present and future public convenience and necessity, is not well-founded. "Successful operation in the past creates a presumption that public convenience and necessity require a continuance of such operation." Past unlawful operations are not a bar to a grant of operating authority, where such operations were conducted under the mistaken belief that they were authorized. See Crichton v. United States, D.C., 56 F.Supp. 876, af-

firmed 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554. There are many previous rulings by the Commission to the above effect as cited in briefs of counsel in this case.

### This Court Without Jurisdiction To Interfere

Congress has provided that a "certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed," etc., if "the proposed services, to the extent to be authorized by the certificate [are], or will be required by the present or future public convenience and necessity." 49 U.S.C.A. § 307. Congress has also provided that where the Commission has acted pursuant to the above statute a reviewing court "shall * * * hold unlawful and set aside agency action, findings, and conclusions found to be * * * arbitrary, capricious, an abuse of discretion * * * unsupported by substantial evidence." 5 U.S.C.A. § 1009 (e). In cases such as this "the Commission, through the application of its expert judgment and experience in, and knowledge of, interstate transportation matters, is the final arbiter upon whether or not additional motor carrier service is required. Public transportation is not something that can belong to an applicant. It is established and determined by proof of conditions which exist in the territory to be served." Wales v. United States, 108 F.Supp. 928, at page 933.

The function of the reviewing court is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done and unless there has been some prejudicial departure from the requirements of law, or an abuse of the Commission's discretion, the reviewing court is without authority to intervene. United States v.

agencies to become careless or lax in the admission of evidence for "the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence

by which rights are asserted or defended." Interstate Commerce Commission v. Louisville & N. R. R. Co., 227 U.S. 88, at page 93, 33 S.Ct. 185, 187, 57 L.Ed. 431.

Pierce Auto Freight Lines, Inc., 327 U.S. 515, at page 536, 66 S.Ct. 687, 90 L.Ed. 821.

Since the Commission in this case had before it substantial evidence tending to show a present and a future need upon the part of various textile mills located in Alabama and the western part of Georgia for additional transportation facilities to move their textile products to the markets in the east, and to show the applicant's ability and willingness to contribute to such needs, and no substantial irregularity appearing in the proceedings, this court has no authority to interfere and counsel for defendants may prepare and submit to this court final judgment and decree in this case in accordance with this opinion.