**COMMERCIAL MOTOR FREIGHT, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. No. 7939.**

United States District Court
S. D. Ohio, E. D.

Oct. 30, 1967.

Anthony C. Vance, Washington, D. C., for plaintiff Roadway Express.

David Venable, Washington, D. C., for plaintiff Hennis.

James W. Lawson, Washington, D. C., for plaintiff Bell.

R. L. Ratchford, Columbus, Ohio, for remaining plaintiffs.

Robert M. Draper, U. S. Atty., Columbus, Ohio, for defendants.

Before CELEBREZZE, Circuit Judge, WEINMAN, Chief Judge, and KINNEARY, District Judge.

## DECISION AND ORDER

KINNEARY, District Judge.

This action was instituted by Commercial Motor Freight, Inc. (Commercial),

Roadway Express, Inc. (Roadway), Hennis Freight Lines, Inc. (Hennis), Bell Lines, Inc. (Bell), The Cleveland, Columbus & Cincinnati Highway, Inc. (CCC), Motor Express, Inc. (Motor), and Liberty Highway Company (Liberty), to set aside and have enjoined the orders of the Interstate Commerce Commission (Commission):

    a) Granting Ohio Southern Express, Inc. (OSE) the authority to purchase the regular and irregular route operating rights of the bankrupt Vermilion Truck Line, Inc. (Vermilion) in the application docketed before the Commission as MC–F–7919; and

    b) Granting OSE a certificate of public convenience and necessity commensurate in scope with the Vermilion operating rights which were the subject of the Section 5 application (MC–F–7919) and which was docketed before the Commission as MC–114238.

The jurisdiction of the Court is invoked and arises under Title 28, United States Code, Sections 1336, 1398, 2284, 2321 and 2322; Title 49, United States Code, Sections 17(9), 305(g), 305(h), 306(a), 307(a) and 5(2); and Title 5, United States Code, Sections 1007 and 1009.

Plaintiffs and the intervening defendant, OSE, are all common carriers by motor vehicle engaged in the transportation of commodities in interstate commerce pursuant to certificates of public convenience and necessity granted to them by the Commission.

In summary, the proceedings before the Commission were as follows:

On July 13, 1961, OSE and Vermilion filed a joint application with the Commission for authority for OSE to purchase from Vermilion its regular route rights generally between Cleveland and Vermilion, Ohio, and irregular route rights between Vermilion and all of Ohio. Both of these theretofore had been granted to Vermilion by the Public Utilities Commission of Ohio (PUCO).

As a matter directly related to the joint application, OSE filed, on July 13, 1961, an application with the Commission seeking a certificate of public convenience and necessity authorizing operations in interstate or foreign commerce corresponding to the operations authorized to be conducted by Vermilion in Ohio.

Based upon both its intrastate rights and its applications filed prior to July, 1961, Vermilion was authorized by the Commission to engage in interstate operations. Vermilion became a bankrupt in April, 1961, and the bankrupt, with Charles M. Hyman as receiver, succeeded to these intrastate and interstate rights.

Among other rights, OSE has authority to transport general commodities between points within one hundred miles of Atlanta, Georgia and points within twenty-five miles of Akron, Ohio; it also has authority between the Lorain, Ohio, Ford Motor Company plant and points within one hundred miles of Atlanta, Georgia.

On August 1, 1961, the Commission issued an order authorizing OSE to lease temporarily the Vermilion rights it sought to purchase. Upon the issuance of this order, Hennis filed a petition for reconsideration of the irregular route part of the Commission's temporary order. The Commission denied this petition by order of September 18, 1961. On November 29, 1961, OSE and Vermilion petitioned for an interpretation of that order. This petition was denied on March 16, 1962.

The joint application of OSE and Vermilion and Vermilion's application of July 13, 1961, were heard on a consolidated record on three occasions—at Cleveland, Ohio, once at Atlanta, Georgia and again at Cleveland, Ohio. Eight motor carriers holding interstate rights appeared as protestants at these hearings.

On June 27, 1963, the Hearing Examiner recommended a grant of the July 13, 1961, applications on the basis that (1) although Vermilion's irregular route authority was dormant, a public necessity

existed for reauthorizing it, and (2) although, under the Commission's order of August 1, 1961, as extended by its order of December 26, 1961, OSE had tacked and performed certain unlawful operations, nevertheless it had performed generally under a color of right, and, therefore, such operations should not bar approval. The Division 3 Report and Order of December 4, 1964, found that OSE should be authorized to operate only the regular route rights of Vermilion, and denied authority to operate Vermilion's irregular route rights.

On June 7, 1965, Eazor Express, Inc. (Eazor) and OSE filed a joint application for temporary authority to operate the motor carrier properties of OSE. Eazor filed an application on June 9, 1965, to purchase OSE. On June 29, 1965, as extended by the order of November 26, 1965, the Commission authorized Eazor to assume temporary control of OSE. Control was assumed on July 6, 1965.

The proceedings initiated by OSE and Vermilion in July, 1961, were ordered reopened on July 5, 1965, for consideration on the record, and oral argument was had on March 2, 1966 before eight of the eleven Commissioners.

The Commission in its report and order of June 29, 1966, found that:

1. The purchase by OSE of the operating rights of Vermilion, and the acquisition of control by W. D. Buffaloe through the purchase of the rights were proposed upon just and reasonable terms and conditions; that such purchase transaction was lawful and would be consistent with the public interest. Further, that if the purchase of Vermilion's rights by OSE is consummated, OSE could continue certain of the operations theretofore lawfully conducted by Vermilion in interstate or foreign commerce.

2. As a matter directly related to the purchase of Vermilion's rights by OSE, the present and future public convenience and necessity requires continuance by OSE of certain of the operations lawfully conducted by Vermilion in interstate or foreign commerce and that OSE is able to perform such service and conform to all requirements of law.

Plaintiffs come to this Court for review and reversal on the broad ground that, in making its findings, the Commission abused its discretion, exceeded its statutory authority, made substantial errors, and that its final decision is erroneous, arbitrary, capricious, unsupported by substantial evidence, and in violation of law.

Plaintiffs present numerous main and sub issues, but out of the intricate and large tapestry of briefs and argument there emerges, in the opinion of this Court, a clear picture of one basic and dispositive issue: Did the Commission lawfully find that OSE's acquisition of Vermilion's rights to operate regular and irregular routes is consistent with the public interest, and that the present and future public convenience would be served thereby?

One of the two principal grounds urged by plaintiffs for this Court to set aside the Commission's order of June 29, 1966, arises out of the application filed by Eazor on June 7, 1965 for authority temporarily to operate the motor carrier properties of OSE, and the application filed by Eazor on June 9, 1965 for authority to acquire control of OSE by purchase of its outstanding capital stock. On July 23, 1965, Roadway filed a "Petition For Official Notice of Matters Relevant to Reopened Proceedings, and Alternately for Further Hearing" for the limited purposes of introducing evidence on the application of Eazor to purchase OSE, and of determining whether the shippers who previously appeared in support of OSE taking over Vermilion's irregular route intrastate Ohio rights would likewise support the revitalization of these dormant rights when they were to be operated by Eazor rather than OSE.

Then, on August 27, 1965, Roadway filed a petition for reconsideration of the

rejection by the Commission's Secretary of its reply filed on August 18, 1965. The Commission denied both of these petitions in its full report and order of June 29, 1966.

Plaintiffs contend that the Commission abused its discretion and acted arbitrarily, capriciously and unlawfully in denying Roadway's petitions to reopen the principal proceedings after Eazor and OSE entered into their purchase agreement because OSE, in its applications of July, 1961, proposed to operate Vermilion's dormant rights under its management of record. However, the plaintiffs continue, after temporary operation of Vermilion's rights and prior to the Commission's final decision, OSE about-faced and proposed that Eazor operate the Vermilion rights. At this point, the plaintiffs urge, they should have been given the opportunity to establish by hearings whether or not the Vermilion shippers would support Eazor's operation of the Vermilion rights, through the delivery of business to OSE (under Eazor management).

Although it is conceivable, there is no reason arising out of the record in this case to believe that if given an opportunity, the shippers who supported OSE in its take-over of Vermilion's rights would not support the same operation just because the ownership had changed. These shippers have amply demonstrated their support of the new and improved service inaugurated by OSE in the use of Vermilion's rights. We may justly conclude on the record alone that these shippers are practical businessmen who are interested only in getting their goods transported and delivered by the best service available; they are not interested in a name or an ownership. The record discloses that these shippers did not respond to the revitalization of the Vermilion dormant rights because OSE was a one man operation owned by a man named Buffaloe who headquartered in Atlanta, Georgia, but rather that they responded because OSE offered them a service they could not theretofore secure from other carriers. There is every

reason to believe on the record as made that the shippers in question would use the service offered under the revival of the Vermilion rights whether it continued under the name and business structure of OSE or Eazor. The position of Roadway in petitioning for a reopening of the proceedings is so tenuous as not to merit the favorable consideration of this Court.

■ It is our opinion, and we decide, that the Commission lawfully and correctly denied Roadway's petitions. There was no clear abuse of Commission discretion in refusing to reopen the case for rehearing. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946).

The other general ground urged by plaintiffs for reversal is that the Commission arbitrarily, capriciously, and without adequate subsidiary findings and substantial evidence found that a public need existed for and a public convenience would be served by revival of Vermilion's dormant irregular route authority, that OSE was able to operate on the rights acquired from Vermilion, and that instant approval of the applications would not adversely affect plaintiffs.

■ The scope of our review is limited to a determination of whether the Commission's orders are within the scope of its statutory authority and are based upon adequate findings which are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); ICC v. Union Pac. R.R., 222 U.S. 541, 32 S. Ct. 108, 56 L.Ed. 308 (1912).

As to whether or not the public convenience and necessity warranted the revival of Vermilion's dormant authority for use by OSE, the record is replete with supporting shipper testimony that the existing services of plaintiffs were inadequate either on a time, service or equipment basis. This testimony is totally unrefuted with the exception of plaintiffs' resort to semantics to undercut its undeniable and substantial import to the effect that plaintiffs could

not or would not render the necessarily desired services.

■■ While need for services of the applicant is not the sole determinative criterion on the question of public convenience and necessity, it is to be weighed against the adequacy of existing services. ICC v. J-T Transport Co., 368 U.S. 81, 82 S.Ct. 204, 7 L.Ed.2d 147 (1961). When weighed in the instant situation, the award of the certificate to OSE is supported clearly by the substantial evidence on the record as a whole with adequate subsidiary findings.

The assertion of OSE's unfitness is based on certain prior acts which plaintiffs allege as unlawful. The acts consisted of the tacking of the Vermilion regular and irregular route rights, combining authorities at the Ford plant in Lorain, Ohio, and handling shipments at Cleveland terminals which are more than twenty-five (25) miles from Akron, Ohio. The substantial evidence of record supports the finding of the Commission that even if these acts were unlawful they were minor and were conducted under the color of right. Even if assumed to be illegal, the acts were performed without objection from anyone and were such insignificant departures from the scope of authority that OSE was not apprised of the illegality, and thus, performed under color of right.

■■ Open operations conducted in the honest belief that they are authorized (under color of right) are not a bar to the grant of operating authority. Atlanta-New Orleans Motor Freight Co. v. United States, 155 F.Supp. 68 (N.D.Ga. 1953); Crichton v. United States, 56 F. Supp. 876 (S.D.N.Y.1944), affirmed per curiam, 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554 (1945). The function of this Court is not to determine anew the fitness of OSE. We can only determine whether the finding of fitness is supported by the substantial evidence of record. In the instant proceeding, the substantial evidence of the record does support the finding that the assumedly illegal acts were not so severe as to bar the grant of operating rights to OSE.

Kroblen Refrigerated Xpress, Inc. v. United States, 197 F.Supp. 39 (N.D.Iowa 1961).

■ The finding of the Commission that instant approval of the OSE application would not adversely affect the plaintiffs is well supported by substantial evidence of record. After supporting shippers testified as to their distinct need for the services of OSE, plaintiffs (then as protesting carriers) failed to carry their burden of establishing their ability and willingness to perform the same services. ICC v. J-T Transport Co., supra.

The record testimony is to the effect that the supporting shippers have been unable to obtain from plaintiffs the more select or more specialized service for which these shippers have a distinct need. The OSE traffic consists of shipments which previously had not been properly serviced by plaintiffs or newly generated traffic which based on past experience could not be properly serviced by plaintiffs.

Loss of traffic is not the sole determining factor of adverse effect when prior protestant service was merely pro forma. The fact that plaintiffs gave merely adequate service rather than filling the distinct needs of the shippers must be weighed in the balance. ICC v. J-T Transport, supra. Thus, when plaintiffs failed to sustain their burden of showing they could fill the distinct need of the supporting shippers, (rather than merely providing reasonably adequate service), the substantial evidence supports a finding that OSE could and would fill the distinct need and that the instant approval would not adversely affect plaintiffs.

■ Plaintiffs assert that the Commission did not answer the issue of the circuity of OSE's operation as it reflects on OSE's fitness to be awarded the contested authorizations. This claim is, however, wholly without merit.

While not expressly mentioning the issue of circuity in every paragraph of its report, the subsidiary findings of the

Commission as to the need for OSE's service, the fact that the authorization for such service would not adversely affect protestants (as it had not when the service was conducted under temporary authority), and the economic feasibility of such operations fully support the conclusion that OSE is fit in spite of any possible circuity. This finding is fully reconcilable with the National Transportation Policy and is supported by substantial evidence and adequate subsidiary findings.

Accordingly, we conclude that plaintiffs' requested relief should be and hereby is denied, and the orders of the Commission will remain unaltered.