**E. J. BRADLEY, d/b/a Ed's Fuel and Transfer, Plaintiff,**

v.

**UNITED STATES of America, Interstate Commerce Commission, Defendants.**

**No. A–81–69 Civ.**

United States District Court,
D. Alaska.

Jan. 28, 1971.

John M. Stern, Jr., Anchorage, Alaska, for plaintiff.

Douglas B. Baily, U. S. Atty., Peter A. Fitzpatrick, Atty., Interstate Commerce Commission, for defendants.

Before JERTBERG, Circuit Judge, and PLUMMER and VON DER HEYDT, District Judges.

## OPINION

PER CURIAM.

This action was brought to set aside and annul an order of the Interstate Commerce Commission Transfer Board [hereinafter referred to as the Commission and Transfer Board, respectively], which authorized the transfer of motor carrier operating rights between two small carriers in Wrangell, Alaska. This suit was filed by the only competing interstate trucker on Wrangell Island, whose vigorous protests were rejected by the Commission.

On June 24, 1968, Peter C. Mc-Cormack III, doing business as Etolin

Transfer & Storage Company [hereinafter referred to as Etolin] and Fritz Schloe, doing business as Schloe's General Hauling [hereinafter referred to as Schloe] jointly filed with the Commission an application for approval of the transfer of Schloe's operating rights to Etolin pursuant to the provisions of Section 5(10) and 212(b) of the Interstate Commerce Act, 49 U.S.C.A. § 5(10) (Supp.1970) and 49 U.S.C.A. § 312(b) (1963), and the regulations prescribed by the Commission codified in 49 C.F.R. Part 1132. The application recited that Etolin was a newly formed company, that it had three motor vehicles, and that the owner's net worth was approximately $10,000.00.

On July 8, 1968, plaintiff filed a "petition to intervene" protesting the application, alleging that the transferor had not conducted interstate operations prior to the transfer and that an oral hearing was necessary to determine the facts with regard to this alleged dormancy. Subsequently, at the request of the Commission, the parties to the transfer submitted additional data stating in pertinent part that (1) shipping invoices for the past two years were unavailable, having been previously entered as items of evidence before the Alaska Transportation Commission [hereinafter referred to as ATC]; (2) that Schloe had conducted very limited trucking operations over the previous 18 months due to ill health; and (3) that transferee sought common carrier authority. In addition the transferor submitted a complete medical report attesting to the poor condition of his health.

On December 12, 1968, the Transfer Board entered its order authorizing the transfer. That order stated:

"\* \* \* the allegations set forth in the protest of Ed's Fuel and Transfer \* \* \* are not supported by evidence which would warrant denial under the above-mentioned rules, and the same are rebutted by the information and attachments contained in letter dated December 2, 1968, filed on behalf of the parties."

Under established procedures, a synopsis of the Transfer Board's order was published in *The Federal Register* on December 28, 1968. Plaintiff then filed a timely petition for reconsideration of that order, which was denied by the Commission on May 21, 1969. The transfer was authorized and Etolin was issued a certificate of public convenience and necessity thereafter. The instant suit was filed on June 20, 1969, alleging a number of errors, which are discussed under appropriate headings below.

### I. *Necessity for Hearing.*

Plaintiff contends that without a hearing (or at least a more fully developed record) it is deprived of an opportunity for adequate review, and that the Commission abused its discretion in not ordering a hearing in this matter.

Plaintiff concedes that the transfer is exempted from the stringent procedural requirements of 49 U.S.C.A. § 5(2) (1959) by 49 U.S.C.A. § 5(10) (Supp. 1970),[1] and that the applicable statutory provision is 49 U.S.C.A. § 312(b) (1963) and the Commission's regulations promulgated pursuant thereto.[2] He also

---

1. Nothing in this section shall be construed to require the approval or authorization of the Commission in the case of a transaction within the scope of paragraph (2) of this section where the only parties to the transaction are motor carriers subject to chapter 8 of this title, (but not including a motor carrier controlled by or affiliated with a carrier as defined in section 1(3) of this title), and where the aggregate gross operating revenues of such carriers have not exceeded $300,000 for a period of twelve consecutive months ending not more than six months preceding the date of the agreement of the parties covering the transaction.

2. Except as provided in section 5 of this title, any certificate or permit may be transferred, pursuant to such rules and regulations as the Commission may prescribe.
   The following regulations have been promulgated by the Commission:
   49 C.F.R. § 1132.3 (1970) General bases for approval.

concedes that Congress's intent in enacting the § 5(10) exemption was "to provide a means whereby [certain inconsequential transfers] could be effected easily and without delay * * *." Atwood's Transport Line—Lease—John A. Clark, 52 M.C.C. 97, 107 (1950).

■ No hearing is required under § 312(b) and there is no deprivation of due process that would compel the courts to read a right to a hearing into the statute in order to uphold its constitutionality. A. L. Root Transportation, Inc. v. United States, 280 F.Supp. 152, 156 (D.Vt.1968). Chemical Leaman Tank Lines v. United States, 251 F. Supp. 269 (E.D.Pa.1965). Petitions for oral hearing are addressed to the sound discretion of the Commission, and the Commission's decision should not be reversed absent a clear showing of an abuse of discretion. A. L. Root Transportation, Inc. v. United States, *supra.*

In the frequently cited case of Brooks Transportation Co., Inc. v. United States, 12 F.Carr.Cas. ¶ 81,119, Civil No. 2431 (E.D.Va. May 13, 1957), the court said:

"With only twenty vehicles or less at stake, however, the Congress evidently thought the public concern to be too slight to demand the close scrutiny of a full-dress inquiry. For these cases an ex-parte application, under the supervision of the Commission, was deemed adequate. This construction of the Act is underpinned by its legislative history and is confirmed by the practice of the Commission for more than a score of years. 12 F. Carr.Cas. at 50,160.[3]

---

Except as may be otherwise provided in this part, the proposed transfer described in any such application shall be approved if it is shown that the proposed transaction is not subject to the provisions of section 5 of the Interstate Commerce Act; and that the proposed transferee is fit, willing, and able properly to perform the service authorized by the operating rights sought to be transferred, and to conform to the provisions of the Interstate Commerce Act and the requirements, rules, and regulations of the Commission thereunder. Otherwise, the application shall be denied.
49 C.F.R. § 1132.4 (1970) Notice of approval; petitions for reconsideration and oral hearing.
Prior to their effective dates, synopses of affirmative orders entered pursuant to the rules in this part currently will be published in the FEDERAL REGISTER. The notice accompanying such publication will refer to section 17(8) of the Interstate Commerce Act and include a requirement that if a petition is timely filed by an interested person seeking reconsideration or oral hearing, such petition must specify with particularity the alleged errors and shall cite in all cases, the particular section or sections of this part (Rules and Regulations Governing Transfers of Rights to Operate as a Motor Carrier in Interstate or Foreign Commerce), and the arguments based thereon, which petitioner believes warrant a conclusion

different from that set forth in the affirmative order. In the absence of citation of the particular section relied upon, the petition may be rejected. If the petition contains a request for oral hearing, the request shall be supported by an explanation as to why the evidence sought to be presented cannot reasonably be submitted in affidavit form. In this connection, see also Rule 225 of the General Rules of Practice (§ 1100.225 of this chapter).
49 C.F.R. § 1132.5 (1970) General bases for disapproval.
  *     *     *     *     *
(b) *Cessation of operations.* The mere cessation of operations by the holder of an operating right shall not be deemed to require denial of the proposed transfer of such right. If, however, a cessation of operations has occurred, which fact shall be stated in the application, and operations have not been conducted under the considered rights for a substantial period of time, the proposed transfer will be denied unless the holder shows that such discontinuance was caused by circumstances over which he had no control. The Commission may require, in an appropriate case, proof of the nature and extent of operations conducted under the operating right for a period of 6 months preceding the date of the request for such evidence.

3. Act of July 27, 1965, Pub.L. 89–93, § 1, 79 Stat. 284, amended 49 U.S.C.A. § 5

## II. *Were the allegations of dormancy sufficient to warrant a hearing?*

In response to allegations in plaintiff's "petition to intervene", the Commission wrote to counsel for the transferor and transferee requesting information concerning, *inter alia*, possible dormancy of the certificate. *See* 49 C.F.R. § 1132.5(b) (1970). Counsel responded that all of transferor's records were in the possession of the ATC as evidence in a hearing concerning the transfer of intrastate rights. Counsel did admit that little interstate business had been transacted over the last 18 months due to the state of transferor's health. A comprehensive medical report was attached.

Plaintiff contends that the mere fact that the records are with the ATC to show intrastate business is sufficient proof of the dormancy of interstate operations; that the evidence submitted to the Commission in the form of way bills shows, at the most, one interstate shipment in the last six months; that transferor does not in fact allege *any* interstate business in the last 18 months. The Commission, however, relied upon the doctor's certificate as evidence that the dormancy, if it in fact occurred, was due to circumstances beyond the transferor's control.

Plaintiff contends that the cause of dormancy should be legally irrelevant, citing Kings Van and Storage Inc.—Purchase—Mrs. Dora Millard, 75 M.C.C. 582 (1958). The case is clearly inapposite, as the court in that case distinguished Steel City Transfer, Inc.—Purchase—J. J. Healy Transfer, 64 M.C.C. 563 (1955)—a case in which transfer was authorized under 49 U.S.C.A. § 312(b) (1963) *despite* a two year dormancy period—on the ground that illness *is* an excuse for dormancy under § 312(b), but *not* under § 5. *See also* H. C. Daniel—Transfer—Albert E. Fagan, 1969 F.Carr.Cas. ¶ 36,285 at 36,285.05.

Plaintiff alleges that the transferor's sickness was not the cause of the dormancy, inasmuch as the transferor held two other full-time jobs during the period of his illness and also conducted intrastate business during this time. These are mere assertions which could have been documented to the Commission without the need for a hearing. Failure to do so is sufficient cause for upholding the Commission's discretion in denying the request for an oral hearing. 49 C.F.R. § 1132.4 (1970); A. L. Root Transportation Co. v. United States, *supra*; Lincoln Transit Co. v. United States, 256 F.Supp. 990 (S.D.N.Y.1966).

## III. *Was the evidence of unfitness sufficient to warrant a hearing?*

Plaintiff challenges the Commission's finding of fitness on the grounds that (1) the transferee's net worth statement is false, and (2) transferee had been operating in violation of Commission requirements.

1. Allegations of misrepresentations in the net worth statement [4] could have been documented by excerpts from the ATC hearing and failure to do so is sufficient grounds for upholding the Commission's discretion in discounting the allegations.[5] 49 C.F.R. § 1132.4 (1970); A. L. Root Transportation Co. v. United States, *supra*; Lincoln Transit Co. v. United States, *supra*.

2. Past unlawful operations are not an absolute bar to a finding of fitness, particularly where there is no evi-

(10) (1959), substituting a maximum gross operating restriction for the equipment limitation referred to in *Brooks*. *See supra*, note 1.

4. Research disclosed no cases specifically discussing financial responsibility as a parameter of "fitness". The Commission has broad discretion in making this determination, and in the absence of obvious error, their decision should not be disturbed.

5. Several decisions note that the transfer petition is signed under oath and, presumably, should not be taken lightly. *See, e. g.*, A. L. Root Transportation, Inc. v. United States, 280 F.Supp. 152, 154 (D.Vt.1968).

dence of knowing violations. Past violations are merely a factor to be weighed by the Commission in determining *present* and *future* fitness. Sears Contract Carriers Application, 92 M.C.C. 602 (1962); Trushenski Contract Carriers Application, 91 M.C.C. 502, 506 (1962); Atlantic—New Orleans Freight Co. v. United States, 155 F.Supp. 68 (N.D.Ga.1953).

IV. *Should the Board have restricted the size of equipment to be operated by the transferee to that previously operated by the transferor? Did the Board give adequate consideration to efforts by Bradley to meet the demands of area shippers? Should the Board have made findings concerning the difference between the business as conducted by transferor as it would be conducted by transferee?*

■ These related questions raise the issue of the "new service" doctrine. Roughly stated, the "new service" doctrine requires that where the evidence shows that a transfer would create new services, either by expansion of old services or by revival of dormant rights, the Commission must make an independent determination that such services are required by public convenience and necessity. In § 5 hearings the burden of proof to show no new services is on the transferee, but the decision as to convenience and necessity is addressed to the sound discretion of the Commission. *See, e. g.* Tose, Inc. v. United States, 304 F.Supp. 894 (E.D.Penn.1969). In making this determination, the Commission has broad discretionary powers and "expertise for divination of future needs * * *." Younger Bros., Inc. v. United States, 238 F.Supp. 859, 860 (S.D.Tex. 1965).

■ While the Commission must take into account the effects of the transfer on competition, there is no right *per se* to be protected from new entrants into the shipping business. In Lang Transportation Co. v. United States, 75 F. Supp. 915 (S.D.Cal.1948), the court held that the Commission has discretion to grant operating rights despite a finding that existing carriers were adequately equipped, willing and able to serve the needs of all shippers. *See also,* Carolina Freight Carriers Corp. v. United States, 297 F.Supp. 848 (W.D.N.C.1969); A. L. Root Transportation Co. v. United States, *supra;* Alexandria, Barcroft & Wash. Transit Co. v. United States, 103 F.Supp. 607 (E.D.Va.1951); Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756 (E.D.Va.1950), aff'd, 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590 (1950); Inland Motor Freight v. United States, 36 F.Supp. 885 (D.Idaho 1941).

■ Plaintiff's own testimony before the ATC, submitted as an exhibit to his petition for reconsideration, indicates that Wrangell is in a growth phase and that he testified at a hearing held in 1964 to the effect that the town could support two carriers.

V. *Did the Commission give proper consideration to the impact of the transfer on plaintiff because of the business relationship between transferee and Alaska Steam?*

■ The Commission requested information concerning the relationship of transferee to Alaska Steam in a letter to counsel for the transferor and transferee dated November 27, 1968. It received assurances on December 2, 1968 that transferee's only relationship to Alaska Steam is that transferee is general manager of Wrangell Wharf Co., which is used by Alaska Steam. There is some vague testimony, consisting entirely of conjecture by Bradley, in the ATC hearing transcript that transferee would have a monopoly position due to his control of the wharf. The Commission was aware of transferee's relationship to Alaska Steam when it approved the transfer. The court must assume that the Commission considered this relationship before approving the transfer, particularly since it specifically requested and received information in this regard.

 

## CONCLUSION

A hearing is not required by the Commission's regulations promulgated pursuant to 49 U.S.C.A. § 312(b) (1968) and the court will not overturn the Commission's refusal to grant such a hearing absent a clear showing of abuse of discretion. The Transfer Board had before it sufficient information to justify its decision, and plaintiff's allegations to the contrary are rebutted or unsupported by any evidence which could have been supplied to the Commission in affidavit form without resorting to an oral hearing.

The decision of the Transfer Board is accordingly affirmed and summary judgment will be entered in favor of defendant.