**GEORGIA HIGHWAY EXPRESS, INC.,
et al., Plaintiffs,**

v.

**UNITED STATES of America and the
Interstate Commerce Commission,
Defendants.**

**Civ. A. No. 15257.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 31, 1971.

Bates Block, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., John P. Carlton, Bishop & Carlton, Birmingham, Ala., Robert E. Joyner, Harold G. Hernly, Jr., Wrape & Hernly, Memphis, Tenn., for plaintiffs.

Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., John W. Stokes, U. S. Atty., Julian M. Longley, Asst. U. S. Atty., Atlanta, Ga., for the United States.

Fritz R. Kahn, Gen. Counsel, Geraldine R. Keyes, Atty., I.C.C., Washington, D. C., for the I.C.C.

Before BELL, Circuit Judge, and HENDERSON and FREEMAN, District Judges.

RICHARD C. FREEMAN, District Judge:

## ORDER

### STATEMENT OF THE CASE

Georgia Highway Express, Inc. and other carriers seek to set aside a decree of the Interstate Commerce Commission granting a certificate of public convenience and necessity to Dowda Motor Freight, Inc. of Centre, Alabama. The protesting plaintiffs, in addition to Georgia Highway, are Bowman Transportation, Inc. and Baggett Transportation Company. The defendants are the Interstate Commerce Commission, the United States, and by intervention, Dowda Motor Freight, Inc.

On January 10, 1969, Dowda filed an application for authority to transport general commodities between Centre, Alabama and Atlanta, Georgia.[1] Prior to this case, Dowda held a certificate of public convenience and necessity to transport general commodities between Centre, Alabama and Rome, Georgia with the right to serve all intermediate points.[2] After publication of Dowda's application in the Federal Register of March 13, 1969, plaintiffs and certain other carriers filed protests. Thereafter, Dowda's application was referred to Joint Board No. 157.[3]

After an oral hearing on September 9 through 11, 1969, the Joint Board recommended denial of the application on the grounds that Dowda was not financially fit and that "[I]n light of the limited volume of freight available in the considered area, the service provided by protestants and other carriers cannot fairly be condemned as inadequate."[4] The Board also found that there was no persuasive evidence indicating that protestants would have been unfavorably affected by approval of the application although loss of some freight would have been inevitable.[5] Subsequently, Dowda filed exceptions to the Joint Board's report and all protestants replied.

[1]. From Centre to the Alabama-Georgia line, over Alabama Highway 9; thence over Georgia Highway 20 to Rome, Georgia; thence over U. S. Highway 411 to Cartersville, Georgia; thence over U. S. Highway 41 to Marietta, Georgia; thence over Interstate Highway 75 to Atlanta, Georgia and return over the same route, serving no intermediate points. Dowda's Application, docketed by the Interstate Commerce Commission as No. MC–128319 (sub. 1).

[2]. Certificate of Public Convenience and Necessity, No. MC–128319.

[3]. Section 305(a) of the Interstate Commerce Act provides that "the Commission shall, when operations of motor carriers * * * proposed to be conducted involve [not] more than three States, refer to a joint board for appropriate proceedings thereon, * * * [a]pplications for certificates * * *" 49 U.S.C. § 305(a). The board was composed of two members, one from Alabama and one from Georgia. The member from Alabama failed to appear at the hearing, thereby waiving its right to participate.

[4]. Joint Board's Recommended Report, 9.

[5]. *Id.*

On September 4, 1970, the Commission's Review Board reversed the recommendations of the Joint Board and granted the application. The Review Board found that Dowda was financially fit and that the public convenience and necessity required Dowda's service because the competing carriers were not meeting the needs of the shipping public. The Review Board rejected plaintiffs' contention that an interchange restriction should be attached to the certificate to prevent Dowda from interlining at Centre with other carriers in order to serve other points in Alabama.

On April 30, 1971, after plaintiffs' petitions for reconsideration were denied, the . Commission issued Dowda a certificate granting authority "[b]etween Centre, Ala., and Atlanta, Ga., serving all intermediate points between Centre, Ala., and Rome, Ga., including Rome." [6] This certificate is still in effect. Plaintiffs then brought the instant suit for judicial review.

On August 6, 1971, this court heard oral argument from both sides. The issues to be resolved by the court are:

I. Is the Commission's finding, that Dowda is financially fit, supported by substantial evidence from the record?

II. Is the Commission's finding, that a public need exists for the service authorized, supported by substantial evidence from the record?

III. Did the Commission act within its discretion by refusing to impose interchange restrictions on the certificate?

IV. Did the Commission grant Dowda greater authority than it applied for?

I. *Financial Fitness*

 Plaintiffs contend that Dowda is not financially fit. This contention is based upon the fact that Dowda had annual gross receipts of less than $7,000 with a deficit of over $3,000. Although the Review Board adopted the statement of facts in the Joint Board's report, they reached a different conclusion. The Review Board concluded that although Dowda's financial structure is questionable, it does have a good credit rating which will enable it to obtain additional financing. The Review Board also concluded that the grant of authority requested would enable Dowda to improve its financial position. Therefore, the Review Board found Dowda to be financially fit.

 The determination of whether an applicant motor carrier is financially fit is a matter within the discretion of the Commission. See, e. g., United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Armored Carrier Corporation v. United States, 260 F.Supp. 612 (E.D. N.Y.1966), aff'd per curiam, 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967); Atlanta-New Orleans Motor Freight Co. v. United States, 155 F. Supp. 68 (N.D.Ga.1953). However, such finding must be supported by and based on substantial evidence. See, Administrative Procedure Act, 5 U.S.C. § 706 (2) (E). In Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966), the Supreme Court defined "substantial evidence" as:

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126. "[I]t must be enough to justify if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbia Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660. This is something less than the weight of the evidence, and *the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.*

6. Certificate of Public Convenience and Necessity, No. MC–128319 (sub. 1), issued April 30, 1971.

National Labor Relations Board v. Nevada Consolidated Copper Corp., 316 U.S. 105, 106, 62 S.Ct. 960, 961, 86 L. Ed. 1305; Keele Hair & Scalp Specialists, Inc. v. F. T. C., 5 Cir., 275 F.2d 18, 21. (Emphasis added)

at 620, 86 S.Ct. at 1026.

In light of the above, this court finds that, although the Review Board and the Joint Board reached different conclusions from the same facts, the testimony [7] of the vice president of a local Centre bank that an unlimited line of credit would be extended to Ralph Dowda, president of the applicant, presents substantial evidence to support the Commission's finding of financial fitness.

## II. *Public Convenience and Necessity*

 Plaintiffs contend that public convenience and necessity do not justify the grant of the requested authority to Dowda. They, therefore, argue that the Commission's action was arbitrary. Although the determination of whether a public need exists and, hence, there is a need for additional carrier service, is a matter to be determined by the Commission, such finding must be supported by substantial evidence. See, Superior Trucking Co. v. United States, 274 F. Supp. 196 (N.D.Ga.1967); Atlanta-New Orleans Motor Freight Co. v. United States, 155 F.Supp. 68 (N.D.Ga.1953).

In one instance, plaintiffs attempt to support their argument by pointing out inconsistent and contradictory findings in the Review Board's report concerning the service rendered by the protestants. They cite one portion [8] of the report where the Review Board found that one

---

7. At the hearing before the Joint Committee, Mr. Fortenberry, a local bank officer, testified:

Q. (By Mr. Hernley): Mr. Fortenberry, Dowda, as far as I know, Ralph Dowda and Dowda Motor Freight, Inc. have lost money ever since it's been in the business, and as I understand it, it's your testimony that good sound banking practices, that you're ready to just finance Mr. Dowda to the hilt regardless of his losses. Is that your testimony, honestly?
A. I have made my statement to finance Ralph Dowda on his freight operation from Atlanta to Centre, Alabama. If it takes a new tractor, new trailer, what his services are, he can get it from our bank.
Q. Regardless of how much money he loses?
A. After he gets started from Atlanta to Centre, Alabama, he's going to show a profit in his operations.
Q. That's what you think anyway?
A. Yes, sir, that's the reason we made the committment (sic).
Q. Anyway, he lost at least, over 3 thousand dollars to date, and I think when we see the '68 sheet we'll find it's more than that. But regardless, your company stands ready to stand behind him, is that right?
A. Yes, sir, that's right. (Tr. 136–37).
* * * * *
Q. I'm not talking about that. I'm talking about, Mr. Fortenberry, and maybe I'm hard of hearing or not getting my question over to you, but my question is, what is there about Mr. Dowda, does he have a hundred grand or is there somebody behind him, or what is there about Mr. Dowda that opens up this unlimited line of credit?
A. Because he came and told me, said "I want to get service into Centre." He explained to me the needs, which I understood very much, that we do need overnight service from Atlanta to Centre. I've been knowing this boy all my life, of he's been knowing me all my life. And I'm willing to go the route with him in order for Centre, Alabama to receive services from Atlanta, Georgia that other cities in our state receive.
Q. Even if you lose your shirt?
A. We're not going to lose our shirt on Ralph Dowda.
Q. Well, you're pretty much down the road, aren't you?
A. No, sir, I've never lost a dime on him.
Q. In other words, you think Mr. Dowda can pay off his loans?
A. Yes, sir. (Tr. 138–39).

8. Plaintiffs quote the following from page 8 of the Review Board's Report:
Baggett is also authorized to operate between Atlanta and numerous points in Alabama. It presented various exhibits of representative shipments moving from, to, and through Atlanta, including transit time. These exhibits show that it transported a large amount of traffic, and that *it provided fairly expeditious deliveries.* (Emphasis added).

of the protestants provided "fairly expeditious deliveries" and then they cite another portion [9] on the same page of the report where the Review Board found that the grant of the requested authority is justified by the inability of protestants to furnish the public with "fairly expeditious deliveries." Plaintiffs either ignore or fail to recognize that in the first cited portion of the report [10] the Commission's finding refers to only one protestant (Baggett) whereas in the second cited portion [11] the Commission's finding is in regard to all the protestants —taken as a group. In these portions of the report the Commission has merely found that, although the service of one protestant (Baggett) is "fairly expeditious," the service of all protestants as a whole is not "fairly expeditious." This court finds nothing inconsistent or contradictory in such findings.

Plaintiffs also contend the Commission's finding, that a public need exists, is not supported by substantial evidence. The record reveals the following facts. Ten receivers and shippers from Centre (a community of about 2,500 people) and one shipper from Atlanta, testified at the Joint Board hearing in support of Dowda's application.[12] Most of the supporting witnesses are small businessmen who have attempted to use the services of the existing protestant carriers, but they have found such service to be unsatisfactory because of the inability to obtain expeditious deliveries.[13] Some shippers may have lost sales because of poor delivery service.[14] Several shippers have been forced to resort to carrying their goods between Centre and Atlanta themselves.[15] Protestant Bowman will only serve Centre direct if there is a shipment of 10,000 pounds or more and on less-than-truckload shipments it interlines with feeder carriers.[16] Georgia Highway's witness testified that small shipments would not be transported from Atlanta to Centre overnight because it would not be economically feasible.[17] In view of the above this court finds that there is substantial evidence in the record to support the Review Board's conclusion that "the protestants are not meeting the requirements of the shipping public in the transportation of less-than-truckload shipments"[18] and the Commission's finding that public convenience and necessity justify the granting of the requested authority.

9. Plaintiffs contend that the following quote, when compared with the quote in footnote 8, demonstrates the Review Board's inconsistent, contradictory and therefore arbitrary action in granting the certificate:

 The evidence of the supporting shippers conclusively shows that they have a large volume of traffic moving between Atlanta and Centre, and that they have a need for expeditious deliveries. They have tried the services of the existing carriers, but these have proven inadequate to meet the reasonable transportation requirements of the shippers. *The shippers have not been able to obtain expeditious deliveries, and there have been rather extensive delays in transit.* In fact, there is evidence of the shippers' losing sales and of their being required to engage in proprietary carriage because of the inability to obtain prompt service from existing carriers. Moreover, several of the shippers have experienced damage to their lading. It is clear that the protestants are not meeting the requirements of the shipping public in the transportation of less-than-truckload shipments. Consequently, applicant should be granted authority to meet these needs which are not now being fulfilled. (Emphasis added) Review Board's Report, 8.

10. See n. 8 *supra.*

11. See n. 9 *supra.*

12. Review Board's Report, 4–7.

13. Transcript of Hearing Before the Joint Board (hereafter referred to as Transcript), 110–11, 149, 205; Exhibits admitted as Evidence at the Hearing Before the Joint Board (hereafter referred to as Exhibit) 10.

14. Exhibit 13.

15. Transcript 172; Exhibit 3, 7.

16. Transcript 315.

17. *Id.* at 233.

18. Review Board's Report, 8.

### III. *Refusal to Impose Interchange Restrictions*

■■ Notwithstanding their contention that the certificate should not have been granted, plaintiffs contend that the Commission was arbitrary in its refusal to impose the interchange restrictions requested by plaintiffs on Dowda's certificate. The requested restrictions would have prevented Dowda from interlining with carriers at Centre on traffic moving to certain industrial and commercial points in northern Alabama.

The determination of whether or not to impose interchange restrictions on a certificate of public convenience and necessity is within the discretion of the Commission. See, e. g., Superior Trucking Company v. United States, 306 F. Supp. 872 (N.D.Ga.1969). The Commission's policy concerning interchange restrictions is set forth in Fox-Smythe Transp. Co. Extension-Oklahoma, 106 M.C.C. 1 (1967):

> In order that common carriers may fulfill their public obligation, expressed in section 216(b) of the act, to provide adequate service and facilities for the transportation of property in interstate commerce, the act itself encourages interchange by providing, in section 216(c), a correlative privilege of establishing through routes with other common carriers by motor, rail, and water. Tompkins Motor Lines, Inc., Extension—Louisville, 95 M.C.C. 472, 481. However, *in appropriate circumstances usually involving multiple applications seeking competing operating rights, restrictions against interline and tacking at origin and/or destination points have been imposed.* These instances evolve when grants of authority are tied closely to the applicants' existing operations and where tacking and interchange would result in additional competitive operations which are not contemplated and which would adversely and materially

affect the operations of other authorized carriers. (Emphasis added) at 19.

Thus, the Commission has adopted the policy that motor carrier certificates may not contain "tacking" or "interlining" restrictions unless protestants carry the burden of proving that such restrictions are essential to prevent material and adverse harm to them. See, e. g., Warren Transport, Inc. Extension-Dubuque to North Dakota, 98 M.C.C. 761 (1965); Miller Motor Line of N. C., Extension-New York, 66 M.C.C. 529 (1956).

Of the five large protesting carriers, Baggett submitted evidence showing the traffic moving through various points [19] and Gordons submitted evidence of revenues from its small shipment traffic for one week.[20] The Commission reviewed this evidence and concluded that plaintiffs had not sustained their burden of showing they would be materially and adversely affected by the failure to impose the requested interchange restrictions. Therefore, this court finds that the Commission did not act arbitrarily but rather acted within its discretion in refusing to impose such restrictions.

### IV. *Grant of Authority*

■ Plaintiffs contend that the Commission granted Dowda, in the certificate issued to it, greater authority than Dowda had requested. Plaintiffs argue that the Commission's action in so doing violated Section 305(e) of the Interstate Commerce Act, 49 U.S.C. § 305(e) which requires that the Commission give due and proper notice of an application for new authority to interested parties.

In its application Dowda requested to be permitted to operate service between Centre, Alabama and Atlanta, Georgia over a stated route serving no intermediate points.[21] Since 1968 Dowda has held a general commodity regular route certificate authorizing service between

---

19. Exhibit, 26–32.

20. Exhibit, 41, 42.

21. *See* n. 1 *supra.*

Centre, Alabama and Rome, Georgia, serving all intermediate points.[22]

At the hearing Ralph Dowda, president of Dowda, testified that it was absolutely and unequivocally not part of the proposal of his company to provide any service on the movement of interstate traffic between Atlanta and Rome, Georgia.[23]

The Commission combined Dowda's authority under its existing certificate with the authority applied for and issued Dowda a certificate specifically revoking its prior certificate and granting authority "[b]etween Centre, Ala., and Atlanta, Ga., serving all intermediate points between Centre, Ala., and Rome, Ga., including Rome." [24] Plaintiffs contend that this grant of authority gives Dowda the right to serve intermediate points between Atlanta, Georgia, and Centre, Alabama.

Since the limits of the above grant of authority do not appear to be clearly defined and since any other interpretation of the Commission's grant of authority to Dowda would be invalid because granted in violation of Section 305(e) of the Interstate Commerce Act, this court will interpret the above grant of authority as the Commission obviously intended— to include only the authority Dowda applied for and that which it already had.

The court, therefore, construes the words on the certificate issued to Dowda, "[b]etween Centre, Ala., and Atlanta, Ga., serving all intermediate points between Centre, Ala., and Rome, Ga., including Rome" to confer the following authority:

(1) To transport cargo between Centre, Alabama and Rome, Georgia serving all intermediate points.

(2) To transport cargo between Centre, Alabama and Atlanta, Georgia provided that:

(a) All cargo originating in Atlanta, Georgia must go directly to Centre, Alabama before it may be de-livered to any intermediate points between Centre, Alabama and Rome, Georgia (including Rome);

(b) All cargo terminating in Atlanta, Georgia must come directly from Centre, Alabama;

(c) All cargo originating at points intermediate to Centre, Alabama and Rome, Georgia (including Rome) destined for Atlanta, Georgia must go first to Centre, Alabama and then directly to Atlanta, Georgia.

Accordingly, for the reasons stated above plaintiffs' prayers for relief are hereby denied.

It is so ordered and adjudged.

---

22. *See* n. 2 *supra.*

23. Transcript, 39.

24. Certificate of Public Convenience and Necessity, No. MC–128319 (sub. 1), issued April 30, 1971.