CAROLINA FREIGHT CARRIERS CORPORATION, a corporation, Cherryville, North Carolina; Mercury Motor Express, Inc., a corporation, Tampa, Florida; and Johnson Motor Lines, Inc., a corporation, Charlotte, North Carolina, Plaintiffs, and R–C Motor Lines, Inc., a corporation, Jacksonville, Florida; Georgia-Florida-Alabama Transportation Company, Inc., a corporation, Dothan, Alabama; and P. C. White Truck Line, Inc., a corporation, Dothan, Alabama, Intervening Plaintiffs,

v.

The UNITED STATES of Amercia and the Interstate Commerce Commission, Defendants, and Alterman Transport Lines, Inc., a corporation, Miami, Florida, Intervening Defendant.

No. 2365.

United States District Court
W. D. North Carolina,
Charlotte Division.

March 18, 1969.

Hall Morrison Johnston, Jr., McCleneghan, Miller, Creasy & Johnston, Charlotte, N. C., James E. Wilson, David C. Venable, Jon F. Hollengreen, McInnis, Wilson, Munson & Woods, Washington, D. C., for Carolina Freight Carriers Corporation, a corporation, Cherryville, North Carolina; Mercury Motor Express, Inc., a corporation, Tampa, Florida; and Johnson Motor Lines, Inc., a corporation, Charlotte, North Carolina, plaintiffs.

J. Edward Allen, Glickstein, Crenshaw, Glickstein, Hulsey & Fay, Jacksonville, Fla., and Joseph M. Griffin, Griffin & Gerdes, Charlotte, N. C., for R–C Motor Lines, Inc., a corporation, Jacksonville, Florida, intervening plaintiff.

John P. Carlton, Bishop & Carlton, Birmingham, Ala., counsel for Georgia-Florida-Alabama Transportation Company, Inc., a corporation, Dothan, Alabama; and P. C. White Truck Line, Inc., a corporation, Dothan, Alabama, intervening plaintiffs.

Edwin M. Zimmerman, Asst.Atty. Gen., and John H. D. Wigger, Atty., U. S. Dept. of Justice, Washington, D. C.; William Medford, U. S. Atty., Asheville, N. C.; and Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., for the United States, defendant.

Robert W. Ginnane, Gen. Counsel, and John E. Faulk, Atty., Interstate Commerce Commission, Washington, D. C., counsel for the Interstate Commerce Commission, defendant.

Francis O. Clarkson, Jr., Craighill, Rendleman & Clarkson, Charlotte, N. C., Paul M. Daniell and Alan E. Serby, Watkins, Daniell, Davis & Serby, Atlanta, Ga., for Alterman Transport Lines, Inc., intervening defendant.

MEMORANDUM OF DECISION
AND
ORDER OF DISMISSAL

Before CRAVEN, Circuit Judge, JONES, Chief District Judge and McMILLAN, District Judge.

McMILLAN, District Judge:

Plaintiffs, motor carriers, seek in this suit to set aside an order of the Interstate Commerce Commission (I.C.C. No. MC 107107, Sub. No. 343), awarding a certificate of public convenience and necessity to Alterman Transport Lines, Inc., to haul freight by truck between Charlotte, North Carolina and Florida.

We affirm the Commission and dismiss the suit.

On March 28, 1965 Alterman Transport Lines, Inc. requested authority from the Interstate Commerce Commission to haul general commodities between Charlotte, North Carolina and points in Florida. The hearing examiner took testimony for several weeks in Miami, Charlotte and Washington, and recommended denial of the application. The Interstate Commerce Commission reviewed the examiner's report, made findings of fact and conclusions of law in favor of Alterman, and allowed the application. Petition for reconsideration was denied by order entered June 10, 1968. The plaintiffs, competing motor carriers, filed suit to obtain reversal of the Interstate Commerce Commission's order and to restrain issuance of the certificate of public convenience and necessity until final decision of the case on the

merits. The petition for a temporary restraining order was heard at length in Charlotte on July 26, 1968 and the petition was denied. The case was set for hearing before a three-judge court pursuant to 28 U.S.C.A. § 2284, and was heard in Charlotte on October 22, 1968 before Circuit Judge James Braxton Craven, Jr. and District Judges Woodrow W. Jones and James B. Mc-Millan.

■ The question before the three-judge court is whether the order of the Interstate Commerce Commission is supported by substantial evidence upon a view of the record as a whole, Illinois Cent. R. Co. v. Norfolk & W. R. Co. et al., 385 U.S. 57, 66, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966).

A bird's-eye picture of the controversy among the competing carriers is simply this: Carolina Freight Carriers Corporation; Mercury Motor Express, Inc.; Johnson Motor Lines, Inc.; R–C Motor Lines; Georgia-Florida-Alabama Transportation Company, Inc.; P. C. White Truck Lines, Inc.; Pilot Freight Carriers; Gray Truck Lines; Ryder Truck Lines and others, parties or intervenors, hold certificates entitling them to haul some but not all freight from Charlotte to some but not all points in Florida. None of them provide complete service to North Carolina shippers. All of those named were represented at the hearing before the examiner. Alterman, an established Florida commodity carrier, hauls considerable fruits and frozen products out of Florida to North Carolina and points north, and it has between twenty and thirty-five trucks which return empty each week to Atlanta and Florida from the Carolinas. Alterman offered evidence of equipment and experience and financial capacity to give prompt service between Charlotte and Florida and points in Florida. Alterman proposes to supply service not now being rendered and to supply service which some of the plaintiffs and the protestants are turning down and are unwilling to perform. Ryder Truck Lines, for example, although it has rights to haul freight to Florida, declines to accept freight in Charlotte for forwarding from other carriers.

At the Florida end there is a public need for reliable service among the various cities of Florida for freight brought into Florida or originating in Florida. Alterman proposes to remedy all of this by giving regular pick-up in Charlotte, prompt transport to Florida, and prompt delivery to outlying points in Florida, including points removed from major cities.

The Commission determined that public convenience and necessity would be served if the certificate in question were issued to Alterman; that Alterman was able and willing and ready to perform under the requested franchise; and that the requested certificate should be issued and Alterman be given an opportunity to make good on its promises.

The plaintiffs contend that the Commission's decision is erroneous in a number of particulars. Grounds asserted at the hearing in oral argument, which include substantially all of the objections are:

■ 1. The plaintiffs contend that the grant of south bound authority from Charlotte into Florida is not supported by substantial evidence. On this subject the evidence is, of course, not unanimous, and conceivably the Commission might have reached a contrary result as recommended by the hearing examiner. Nevertheless, the evidence abundantly and substantially supports a finding (if such finding were necessary, see Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H., 1964)) that existing service is unsatisfactory and inadequate and that public convenience and necessity justify and require the authorized additional service. Numerous shippers, freight handlers and receivers testified concerning unnecessarily long transit times and delays in handling of freight south bound from the Charlotte area. These shippers included Alabama Highway Express, Inc.; Alco Import Agency; American Express

Company; Belk's Stores Services; Branch Motor Lines, Inc.; Central Motor Lines, Inc.; Eagle Stores; Florida Merchandising; General Tire and Rubber Company; W. T. Grant; Jenks Metals; Kresge; National Airlines; J. J. Newberry; Tarcon, Inc.; and U. S. Sugar Corporation. Central Motor Lines' testimony described the difficulty of interchanging freight with reluctant existing south bound carriers. Tarcon, Inc., a freight handler dealing in assorted types of freight, offered supporting testimony. Retail stores including Belk's, Kresge and Newberry, testified that deliveries in Florida were both slow and unpredictable and that this interfered with the planning of sales and maintenance of inventory. General Tire and Rubber Company would like to retread its large size tires in its Charlotte plant, but because of uncertainties in transit north and south with existing truckers, it has recapping done by others in Florida instead. The new service, as proposed by Alterman, is, of course, ideal, and there may be doubt that in practice Alterman can carry out its "hearing room promises." The Commission, however, found from the evidence that it should be given the opportunity, and the evidence certainly supports the findings and the conclusions reached by the Commission.

Perhaps the most dramatic evidence in the record on this question of south bound traffic is the testimony that both before and during the conduct of this litigation, the Charlotte based carriers who oppose the Alterman franchise have refused to handle out of Charlotte the very freight which they want to prevent Alterman from handling! It might not be accurate to call this a "dog in the manger" attitude, but the fact of the refusal of those carriers to handle the freight, whatever descriptive language is applied to it, is something which can not be ignored in appraising the Commission's decision.

2. Plaintiffs contend that there is no substantial evidence to support the need for another carrier to haul freight *north* from points in Florida; they say there already are too many empty trucks coming north as it is. As to this the court is of the opinion that authority to bring freight back out of Florida would be a natural concomitant of authority to haul freight into Florida. The return trip is part of a larger picture, which the Commission had to view in its entirety, Acme Fast Freight, Inc. v. United States, 281 F.Supp. 314, 319 (D.Del., 1968); Atlanta-New Orleans Motor Freight Co. v. United States, 197 F.Supp. 364, 369 (N.D.Ga., 1961). If the public convenience requires south bound freight capacity *into* a long peninsula, the right to come *back* out of that *cul-de-sac* with a pay load would seem to be a proper incident for the Commission to add to the right to bring the truck into the peninsula. Independent of that principle, it appears that there was evidence from shippers, including Alco, Belk's and General Tire Company, and from some of the plaintiff truckers themselves (e. g. Carolina Freight Exhibit 113, Appendix F), of need for more reliable north bound service from points in Florida to Charlotte, and there was evidence from National Airlines, W. T. Grant, Belk's and American Express Company of the need for service bound in various directions from points in Florida. The court is of the opinion that both on grounds of *ad hoc* evidence of need for north bound trucks and on grounds of the necessity of getting trucks economically out of Florida once their entry had been authorized, the Commission's decision is correct.

3. The third contention is that there is no substantial evidence to support authority to haul freight in Florida off established routes (from city to city within Florida). The evidence of Belk's, General Tire, National Airlines, American Express Company and the other shippers above mentioned is considered by the court to be ample on that subject, and to support the decision of the Commission. That evidence shows present service to be unsatisfactory and that Alterman's proposals, if carried out, will work material improvement in the service to the public.

4. The fourth alleged error is the fact that the authorities granted to Alterman are not restricted so as to prevent interlining or interchanging freight between Alterman and other carriers. The spectre raised is that unless Alterman is prohibited from interlining or exchanging freight or making joint line shipments with other carriers, Alterman will use these rights as a means of originating freight in Florida for points all over the country and as the means of originating freight in other places elsewhere in the country with Alterman as the ultimate delivering carrier in Florida. Little stress was placed on this in the argument and we think that was correct. If the Commission believed the evidence that interlining arrangements out of Charlotte to Florida are now as bad as the testimony described, it would certainly appear to be reasonable and in the public interest to allow Alterman or any other competent carrier the privilege of trying to improve that service.

5. A fifth assertion is that the Commission should have required of Alterman some advance demonstration of its capacity to perform as proposed, and should have ordered regular performance reports as a condition of continuing to exercise the rights conferred. The theory is that the Commission in its order should have put in a requirement for some specific reports so as to test whether Alterman in practice could live up to its "hearing room promises." We do not agree. Performance reports apparently have never been required until a case or two in 1968. The first case seems to be the Bilyeu Refrigerated Transport case in 106 M.C.C. 692 (1968). It was apparently an experimental move, not required by statute though commendable in its purpose if the Commission in its own judgment found it to be advisable. There is no reason apparent to the court why the Commission could not require a performance report under its general authority, nor why it does not have sufficient power to police the performance of the certificate under paragraph 3 of the order, which reads:

"IT IS FURTHER ORDERED, and is made a condition of their certificate that the holder thereof shall render reasonably continuous and adequate service to the public in pursuance of the authority herein granted, and that failure so to do shall constitute sufficient grounds for suspension, change, or revocation of this certificate."

In the oral argument (and substantially in their briefs), the plaintiffs and the opposing intervenors treat the case as though it were a contest between carriers for a possible plum which the Commission was about to pass out to some favored carrier. It occurs to the court that the claims and priorities and rights of the carriers, and concepts of "justice" *among the carriers,* are strictly secondary to the legal standards set out by Congress—*public* convenience and necessity. We believe that the Commission very correctly addressed itself to the needs of the public and came to a conclusion not only supported by the record but most obvious upon the record, which is that the public needs the extra hauling capacity in the areas covered by the certificate.

If public convenience and necessity are found by the Commission to justify more and more alert competition (which on this record is clearly shown by substantial evidence), it is not grounds for objection that some of the protesting carriers might lose revenue. Norfolk Southern Bus Corp. v. United States, 96 F.Supp. 756, 760–761 (E.D.Va., 1950), aff'd 340 U.S. 802, 71 S.Ct. 68, 95 L.Ed. 590 (1950); a freight franchise is a right to haul but not a right to exclude others from the highways, Lang Transportation Corp. v. United States, 75 F. Supp. 915, 931 (S.D.Calif., 1948) and cases cited.

As for advance proof of capacity by Alterman, there is no guarantee and can be none of perfect performance by the applicant. It is enough that the record shows, as it does, that the applicant has the financial and technical capacity and probably will perform and intends to perform a service which will be in the

public interest under Interstate Commerce Commission supervision.

The findings and conclusions of the Interstate Commerce Commission are fully supported by substantial evidence; the orders of the Interstate Commerce Commission are affirmed; the suit is dismissed.