AKERS MOTOR LINES, INC., et al.,
Plaintiffs,

and

McLean Trucking Company, Intervening
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants, and Malone Freight Lines, Inc., Intervening Defendant.

AKERS MOTOR LINES, INC., et al.,
Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants,

and

Malone Freight Lines, Inc., Intervening
Defendant.

Civ. Nos. 2927, C–C–72–21.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Submitted Oct. 13, 1972.

Decided Jan. 2, 1973.

Charles Ephraim and J. Raymond Clark, Ephraim & Clark, Washington, D. C., Donald E. Cross and Thomas M. Knebel, Rea, Cross & Knebel, Washington, D. C., Charles T. Myers and George C. Collie, Myers & Collie, Charlotte, N. C., and Francis W. McInerny, MacDonald & McInerny, Washington, D. C., for plaintiffs.

Thomas E. Kauper, Asst. Atty. Gen., John H. D. Wigger, Atty., U. S. Department of Justice, Washington, D. C., and Keith S. Snyder, U. S. Atty., Charlotte, N. C., for United States of America, defendant.

Fritz R. Kahn, General Counsel, and Hanford O'Hara, Atty., Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Francis O. Clarkson, Jr., Craighill, Rendleman & Clarkson, Charlotte, N. C., Maurice F. Bishop, Bishop & Carlton, Birmingham, Ala., and Harold P. Boss, Rhodes, Simms & Boss, Washington, D. C., for Malone Freight Lines, Inc., intervening defendant.

Before HAYNSWORTH, Circuit Judge, JONES, Chief District Judge, and McMILLAN, District Judge.

McMILLAN, District Judge:

Plaintiffs in these suits, competing truckers, request the court to annul and set aside orders of the Interstate Commerce Commission (113 MCC 442, June 10, 1971) granting a certificate of public convenience and necessity for irregular-route authority to Malone Freight Lines, Inc., of Birmingham, Alabama, to haul general commodities (with customary exceptions) on a through-route or "cross-haul" basis, through a "gateway" at Elkin and Statesville, North Carolina, between points in North Carolina and points in an "eleven-state area." The eleven-state area includes East Tennessee, the southern two-thirds of New York state, the District of Columbia, and the states of Ohio, Pennsylvania, New Jersey, Delaware, Maryland, Virginia, West Virginia, South Carolina and Georgia. Malone is already serving most of these areas, under claims of right based on existing certificates, and has been doing so since 1950.

The cases were heard together before a three-judge court in Charlotte.

## THE HISTORY OF THE DISPUTED ROUTES

In 1942, G & M Motor Transfer Company, Inc., of Statesville, North Carolina, was awarded authority under Certificate No. MC 73673 to transport general commodities by motor vehicle over irregular routes as follows:

*General commodities,* except those of unusual value, and except dangerous explosives, commodities in bulk,

and those requiring special equipment, over irregular routes.

From Elkin and Statesville, N. C., to points and places in [the "11 State Area"].

From the above-described destination points [i. e., the "11 State Area"] to points and places in North Carolina.

As originally phrased, G & M's certificate was held by the Interstate Commerce Commission to be a single grant of radial authority rather than two separate grants; therefore, "cross-hauling" or "tacking" between points covered by this single grant of authority, even through a point common to both routes, was not allowed. G & M could not provide "through service" or "through routes," even via Elkin or Statesville, between the various points in its territory. In 1945 this court so held (Interstate Commerce Commission v. G & M, Inc., 64 F.Supp. 302 (W.D.N.C.1945)).

Malone Freight Lines, Inc., bought G & M in 1947 with knowledge of these restrictions on the franchise.

On January 31, 1950, a revised certificate, No. MC 75840, was issued to Malone authorizing irregular-route service as follows:

Irregular Routes:

 \*  \*  \*  \*  \*  \*

General commodities, except those of unusual value, and except dangerous explosives, commodities in bulk, and those requiring special equipment.

From Elkin and Statesville, N. C., to points and places in [the "11 State Area"].

From the above-described destination points [i. e., the "11 State Area"] to points and places in North Carolina.

 \*  \*  \*  \*  \*  \*

*Carrier may combine two or more of the above-described irregular-route authorities provided the authorities have a point common to both to which the carrier may transport a given commodity under one authority and from which it may transport the same commodity under the other, and establish through service under such combination provided in each instance the commodity is transported through the common gateway point,* and provided further that this certificate does not contain any restriction or other indication that through service shall not be conducted. (Emphasis added.)

On the face of it, this revised certificate is obviously susceptible of the interpretation that tacking or cross-hauling is authorized.

However, in March of 1950 the Interstate Commerce Commission issued a "corrected certificate" which in terms purported to eliminate the tacking or cross-hauling authority.

In various pieces of litigation before the Interstate Commerce Commission and the courts, the March, 1950 restriction was contested. These contests resulted in:

1) Reissuance on March 10, 1959, of the rights, with a continuation of the March, 1950 restriction;

2) A June, 1959, order vacating the March 10, 1959 certificate;

3) A September 7, 1960 order of the Commission voiding the March, 1950 restriction as having been issued in violation of Malone's rights under the Administrative Procedure Act as interpreted in Watson Bros. Transp. Co. v. United States, 132 F.Supp. 905 (D.Neb.), aff'd. per curiam 350 U.S. 927 [76 S.Ct. 302, 100 L.Ed. 810] (1955) and holding that the March 1950 restriction was "void *ab initio.*"

4) An examiner's decision that tacking was not permitted [*but that Malone was not wilfully violating the law and was operating under a reasonable claim of right*].

5) A decision by the Commission reversing the examiner, on grounds that the certificate clearly permitted tacking, Malone Freight Lines, Inc. Investigation, 102 M.C.C. 163 (1966).

6) A ruling by a three-judge court of this district [Akers Motor Lines,

Inc. v. United States, 286 F.Supp. 213 (W.D.N.C.1968)] that the January 30, 1950 certificate was ambiguous under the circumstances and should be reconsidered by the Commission in light of the entire history of the application rather than just being decided on its own face, and that the Commission should consider whether the certificate had been an illegal enlargement of Malone's authority.

7) The Commission's current order, 113 M.C.C. 442 (June 10, 1971), now before this court, which (twenty-one years after the fact!) concludes that the January, 1950 certificate *was* a single grant of authority; that therefore it did not authorize tacking, *but that Malone's twenty-one years of operation under it since 1950 had been "in good faith under a color of right"*; that no cease and desist order should issue; and that public convenience and necessity require that through-route authority be extended in the eleven-state area to Malone.

8) The institution of the present actions challenging the Commission's order.

During all of these proceedings before the Interstate Commerce Commission and the courts, Malone has steadfastly maintained that it had rights to provide through-route service under the January 31, 1950 certificate; and it has in fact provided such through service, apparently throughout the entire period since 1950.

### THE LAW THAT APPLIES

Chapter 49, Section 307(a), of the United States Code provides:

Subject to section 310, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, *and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity;* otherwise such application shall be denied: * * * (Emphasis added.)

The question before the court is whether there is substantial evidence to support the finding of the Commission that the extension of Malone's authority "is or will be required by the present or future public convenience and necessity * * *."

■■ As matters of general principle, the decision of public convenience and necessity is one for the Commission, Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); despite the heat of contest among interested carriers the question is not private to the competing carriers but is public in nature, Carolina Freight Carriers Corp. v. United States, 297 F.Supp. 848, 852 (W.D.N.C.1969); existing service need not be found inadequate, United States v. Dixie Highway Express, Inc., 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967), and the Commission's decision in one case need not be perfectly consistent with decisions in other cases, Virginian Railway v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L. Ed. 463 (1926).

If the evidence will support the Commission's finding, it is for the Commission rather than this court to make the finding.

■ The court has reviewed the evidence. It shows that under a good faith claim and belief that it was authorized to provide through service, Malone did provide through service using the Elkin-Statesville gateway throughout most of the eleven-state area beginning in 1950. For the year beginning in August 1967 this traffic under one view of the evidence totaled 65,180,520 pounds. Some forty-nine shippers, including the Department of Defense, gave evidence of

the facts of their shipments during that period and of the reliability of and need for Malone's services. This shipper evidence is summarized in Appendix B to the brief of Malone Freight Lines (pages A-5 through A-31), and will not be repeated here. This evidence shows heavy movement of cargo; an important role of Malone in the shipping requirements of the various witnesses; a flexibility in the type of service provided by Malone; and a desire of shippers for a continuation of Malone's services in the interest of adequate competition and in the public interest. This service was summarized in an appendix to the Interstate Commerce Commission's order (113 M.C.C., pages 468, 469 and 470). The Commission's findings also include the following (113 M.C.C. 442 at 459 through 461):

> Malone is a motor common carrier engaged in the transportation of general and specified commodities, primarily over irregular routes, from and to points in northeastern and southeastern States. It maintains terminal facilities at Birmingham, Ala., and operates an abundance of tractor-trailer equipment. The record establishes that Malone is able, financially and otherwise, to conduct the operations here proposed.

> As representative of the service it has performed for many years between points in the "11 State Area" through the Elkin and Statesville "gateways" since the January 31, 1950, reissuance of its controversial operating rights in certificate No. MC–75840, Malone has submitted an abstract of shipments which it transported from August 1967 through July 1968 between points in the said territory through the said "gateways." This abstract establishes that, for the period covered, Malone handled a total of 2,302 shipments, most of which was truckload traffic embracing a wide variety of general freight and weighing 65,180,520 pounds, between numerous representative points throughout the entire "11 State Area."

> Although the abstract does not disclose that Malone conducted extensive operations during the period represented between the specific points (i. e., collectively between points in Georgia and South Carolina, on the one hand, and, on the other, points in Ohio and the involved portion of Tennessee, and (2) between points in Ohio, on the one hand, and, on the other, points in the involved portion of Tennessee) referred to by Youngblood and Akers et al., in their petitions for reconsideration, it does indicate that Malone performed some service in this respect.[14]

14. Thus, the abstract lists one shipment on March 22, 1968, weighing 34,000 pounds, from Charleston, S. C., to Greenville, Tenn., one shipment on May 19, 1968, weighing 41,240 pounds, from Catawba, S. C., to Youngstown, Ohio, and one shipment on November 10, 1967, weighing 22,445 pounds, from Cedartown, Ga., to Ashland, Ohio.

> The application is supported by 49 shippers, including the Department of Defense. The evidence which these shippers have submitted in the form of verified statements generally sets forth the shippers' transportation requirements within the "11 State Area," and indicates their past utilization of and present reliance on Malone's service within this territory. This evidence was summarized by the review board, and the review board's summary, with certain modifications, has been reproduced in the appendix to this report.

> Collectively, the supporting shippers have an overwhelming amount of general-freight traffic moving between points throughout the "11 States Area." The record establishes that Malone, pursuant to the tacking of its controversial operating rights in certificate No. MC–75840, has provided shippers with a satisfactory service in the transportation of literally millions

of pounds of shippers' traffic from and to points in every State (as well as the District of Columbia), except Ohio, in the "11 State Area." [15] Ship-

15. The shippers' evidence reflecting specific quantities of their freight handled by Malone between points in the "11 State Area" embraces traffic survey periods of from 6 to 12 months during 1967 and 1968. Most of the traffic thus reported was transported from August 1967 through July 1968. The preponderance of this traffic evidence reflects service from points in Georgia to points in Delaware, Maryland, New Jersey, Pennsylvania, Virginia, West Virginia, Tennessee, and New York, and from points in Delaware, Pennsylvania, New Jersey, and New York to points in Georgia, South Carolina and Tennessee.

pers indicate overall periods of use of Malone, including utilization of Malone's service between points in the "11 State Area," ranging from 1 year in the case of one shipper to more than 20 years for other shippers. Thirty-six of the supporting shippers attested to having used Malone's service for the transportation of annual freight volumes between points in the involved territory totaling 1 million pounds or more. Shippers do not indicate that they are dissatisfied with the services provided by the protesting carriers, but rather emphasize that they have come to rely upon Malone's service in meeting their transportation needs. Accordingly, they request that this Commission allow the continued availability of this carrier's service within the "11 State Area."

The Commission (page 457) also found that:

In finding that the public convenience and necessity require this service, the board emphasized that applicant has for a number of years conducted extensive operations in good faith under a color of right between points in the "11 State Area" through Elkin and Statesville; that the evidence submitted by the shippers supporting the application establishes a public need for the continuance of such service; and that a grant of such authority would not have a materially adverse effect on the protestants' operations.

Evidence of sustained satisfactory service over a period of twenty years, upon which shippers have come to rely, more than supports the Commission's finding that this sustained satisfactory service is required by public convenience and necessity.

Even taking at face value all of the questions raised about the shipper evidence in the brief of plaintiffs (plaintiffs' February 15, 1972 brief, Appendix C, pages 5 through 31), Malone has satisfactorily performed very substantial shipping services for the shippers in question, and even as thus discounted for purpose of argument the evidence adequately supports the Commission's determinations.

Plaintiffs contend that all of Malone's through route operations since 1950 have been illegal and that Malone's use of the through routes therefore cannot be considered as evidence on the issue of public convenience and necessity.

There have been cases refusing to consider previous unauthorized activities where they were not conducted under a "reasonable color of right" [e. g., Home-Pack Transport, 340 I.C.C. 98, 103 (1971)]. However, that principle does not apply here. Since January, 1950, Malone has held a certificate which on its face can obviously be read to authorize the through routes. After ten years of controversy the certificate was upheld by the Interstate Commerce Commission in 1960. In 1966 an examiner found that Malone's operations were under a reasonable claim of right and the Commission squarely held that the certificate clearly permitted the operations in question. In 1968, although a three-judge court held the certificate ambiguous in its historical context and directed re-evaluation of the certificate, the court conceded that one reasonable interpretation was the one Malone contended for.

With the certificate reading as it does, and with the history of the Interstate Commerce Commission and judicial proceedings such as it was, Malone not only had a clear color of right but a consistent pattern of decisions by the Commission over many years that its color of right was reasonable and in good faith; and the finding of the Commission to that effect in the order now before the court is amply justified on the facts. During the year (1967–68) when the shipper data was accumulated, the most recent decision of a hearing examiner had been that Malone was operating under a reasonable claim of right; and the most recent Commission decision had been that the certificate *"clearly"* permitted tacking.

The court therefore does not consider that any of the past cross-haul or through route operations should have been excluded from the Commission's deliberations. See R–C Motor Lines, Inc. v. United States, 241 F.Supp. 124 (M.D. Fla.1965); Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D. New Hamp.1964); Bowman Transportation, Inc. v. United States, 211 F.Supp. 354 (N.D.Ala.1962).

## THE MATTER OF THE SOUTH CAROLINA-TENNESSEE-OHIO AND THE GEORGIA-OHIO SHIPMENTS

■ The plaintiffs point out (plaintiffs' brief, page 26) that for the study year 1967–68 the evidence discloses only one shipment from South Carolina to Tennessee, one shipment from South Carolina to Ohio, and one shipment from Georgia to Ohio. They point out that one of the plaintiffs, Youngblood Truck Lines, Inc. (now Arkansas-Best Freight System, Inc.), in the same period handled over 49,000 shipments between Georgia and South Carolina on the one hand and Ohio and East Tennessee on the other.

This evidence certainly leaves a question whether there is a public necessity for Malone to provide through service between these particular points. Instead of leaving Malone (as to those specific routes) in the position of one who has successfully *demonstrated* public convenience and necessity, it leaves Malone in the same position as a new applicant who has not heretofore handled any substantial traffic over the routes in question. As to these specific areas (South Carolina to Tennessee, South Carolina to Ohio, and Georgia to Ohio), it appears that the Commission should be directed to re-examine the testimony and make further specific findings whether, despite the lack of previous substantial service by Malone between these points, there is, nevertheless, a public convenience and necessity for the through route service which Malone wishes to provide.

### OTHER ALLEGED ERRORS

■ Plaintiffs also contend that the Commission's decisions are economically burdensome to the plaintiff and are contrary to the Commission's previous practices and decisions. These contentions, even if well founded, do not appear to be of sufficient weight or relevance to disturb the conclusions herein reached.

### ORDER

The evidence clearly demonstrates the ability and competence of Malone to service the routes in controversy. The Commission has ample evidence to support its findings that public convenience and necessity require the extension of the rights to provide the through service authority requested (with the possible limited exception of the South Carolina to Tennessee, South Carolina to Ohio and Georgia to Ohio routes as mentioned above).

The defendants are directed to tender an appropriate judgment:

1) Affirming the Commission's grant of authority in all particulars except the South Carolina to Tennessee, South Carolina to Ohio, and Georgia to Ohio routes, and directing the

Commission to reconsider its findings with respect to those excepted routes.

2) Dissolving the temporary restraining order.

3) Dealing with the "investigation case" and the "original certificate case" in a manner consistent with this opinion.