**FLORIDA-TEXAS FREIGHT, INC., and Universal Carloading & Distributing Co., Inc., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**and**

**Norman Charles Brinke, Intervening Defendant.**

**No. 72-960-Civ-WM.**

United States District Court, S. D. Florida.

Oct. 18, 1973.

Judgment Affirmed May 13, 1974. See 94 S.Ct. 2377.

Bernard C. Pestcoe, Pozen, Pestcoe, Gold & Gold, Miami, Fla., L. Agnew Myers, Jr., Washington, D. C., Clarence William Vandergrift, U. S. Freight Co., New York City, for plaintiffs.

Kelly, Black, Black & Kenny, Miami, Fla., J. Raymond Clark, Ephraim & Clark, Washington, D. C., for intervening defendant.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, John H. D. Wigger, Attys., Dept. of Justice, Washington, D. C., Fritz R. Kahn, Gen. Counsel, Richard H. Streeter, Atty., Interstate Commerce Commission, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., for defendants.

Before DYER, Circuit Judge, and MEHRTENS and ROETTGER, District Judges.

ORDER AFFIRMING INTERSTATE COMMERCE COMMISSION'S GRANT OF FREIGHT FORWARDER PERMIT TO APPLICANT BRINKE

This is an action to enjoin, set aside and annul reports and orders of the Interstate Commerce Commission (hereinafter Commission or I.C.C.) entered in Docket #FF–311 authorizing the issuance of a permit as a freight forwarder pursuant to Part IV of the Act, 49 U.S. C. § 1010 to Norman Charles Brinke, d/b/a N. C. Brinke, of Hialeah, Florida. Pursuant to the I.C.C.'s permit, N. C. Brinke is authorized to operate as a freight forwarder of general commodities between points in Dade County, Florida on the one hand, and, on the other, points in 14 states. Brinke's operations as a freight forwarder are restricted to the use of the trailer-on-flatcar (TOFC) services of common carriers by railroad. Plaintiffs, potential competitors of applicant Brinke, oppose the permit authorized by the I.C.C., primarily alleging that the Com-

mission erred in finding Brinke ready, willing and able properly to perform such service; and to conform to the requirements of the Interstate Commerce Act and the Commission's rules and regulations promulgated thereunder.

Jurisdiction and venue are invoked pursuant to Title 28 U.S.C. §§ 1336, 1398. A three-judge court has been convened pursuant to 28 U.S.C. § 2322.

## BACKGROUND OF THE CASE

N. C. Brinke is no stranger to I.C.C. hearings and the scope of judicial review over reports and orders issued by that governmental agency. Approximately ten years ago Brinke began his struggle for an appropriate permit authorizing the operations of his business in interstate commerce.

On December 6, 1963 Brinke filed an application pursuant to Section 410 of the Interstate Commerce Act, 49 U.S.C. § 1010, seeking a permit authorizing operations in interstate commerce, as a freight forwarder, of general commodities, between points in Dade County, Florida and points in 14 other states, through use of the facilities of common carriers by railroad.

Shortly thereafter on January 24, 1964, Brinke filed an application under Section 211 of the Act in which he sought a license authorizing operations as a freight broker. While § 211 is limited to the brokerage of transportation via motor vehicle, in interstate or foreign commerce, Brinke's application clearly set forth his intention to consolidate shipments for movement in rail TOFC service and to use local drayment for movement to and from piggy-back ramps. These proposed operations are normally performed by freight forwarders rather than brokers. The discrepancy, however, between the proposed . . . . between the proposed rail TOFC service set forth by Brinke and the limitation of § 211 to brokerage of transportation via motor vehicle was not discovered by the joint board to which the matter had been referred, and they recommended that the broker's license be issued.

The board's recommendation was based on the following finding:

"[a]s no one opposes the application, and there is no evidence indicating that the service which applicant seeks to perform is now available, the joint board deems it unnecessary to discuss in detail the evidence adduced in support of the application. However, the evidence does establish that the proposed operation will be consistent with the public interest and the national transportation policy; and that applicant is fit and able, financially and otherwise to perform such service."

On September 8, 1964, in # MC-12892, Brinke was issued a license under Part II of the Act to engage in operations as a broker in accordance with the activities proposed in his application. He has continued to perform these activities since that time.

The freight forwarder application, which was opposed by several competing forwarders, was referred to an examiner for oral hearing to be held in Miami, Florida, beginning on March 9, 1964. Following the hearing, in which seven shippers testified in support of Brinke, the examiner recommended the application be granted. This recommendation was adopted by the Commission, Operating Rights Board No. 1, which in its report and order (323 I.C.C. 376) found Brinke's proposed freight forwarder operations to be consistent with the public interest and the National Transportation Policy and, therefore, approved issuance of a freight forwarder permit upon compliance by Brinke with certain conditions. On reconsideration, the Commission, by Appellate Division 1, affirmed the prior report (326 I.C.C. 322).

Thereafter an action was brought in the federal district court of Delaware asking the court to set aside and enjoin the Commission's orders. In its opinion entitled Acme Fast Freight, Inc. v. United States, 281 F.Supp. 314 (D.Del.1968),

the three-judge court sustained the Commission's determination that a grant of authority to Brinke would be consistent with the public interest and the National Transportation Policy. The court, however, interprets . . . . interpreted the Commission's grant as containing a trailer-load lot restriction.

Further proceedings (not relevant here) were held with the result being that another hearing was scheduled on Brinke's ability to properly perform the proposed service and that the service was consistent with the National Transportation Policy. At this proceeding Brinke adduced evidence of his existing broker operation, the proposed freight forwarder operation and the evidence of 58 public witnesses, including representatives of the Dade County government, two rail carriers, and numerous Dade County shippers and receivers. Once again the examiner concluded that the updated record "demonstrates quite clearly that the service proposed is needed, and that [Brinke] has demonstrated the capacity, ability and willingness properly to perform the service." (Examiner's Report, p. 17) The Examiner further concluded that:

> "[t]he record shows that aside from [Brinke's] limited service there is no outbound freight forwarder service from Dade County to any of the 14 states involved and only limited southbound service to Dade County from 8 of the 14 states involved. Even so limited, no evidence was adduced to show that failure to restrict the service to trailerload lots or in any other manner would adversely affect protestant freight forwarders." *Id* at 18.

He, therefore, recommended that Brinke be granted a freight forwarder permit.

By its decision and order served March 20, 1972, the examiner's recommendations were adopted by the Commission, Division 1. As a condition to the grant, however, Brinke was required to tender in writing a request for coincidental cancellation of the broker license issued to him in No. MC–12892, Norman Charles Brinke Broker Application.

The plaintiffs then filed a "Petition Requesting That The Commission Find That This Proceeding Involves An Issue of General Transportation Importance" in which it was argued that Brinke's prior operations under his broker license rendered him unfit to receive a freight forwarder permit. By its order served April 14, 1972, the Commission denied plaintiffs' petition. Plaintiffs, having exhausted their administrative remedies, then filed the instant suit.

## APPLICABLE LAW

Section 410 of the Interstate Commerce Act, 49 U.S.C. § 1010, contains the provisions pursuant to which the Commission passes upon applications for freight forwarder authority. § 410(c) provides in pertinent part:

> "The Commission shall issue a permit to any qualified applicant therefor, authorizing the whole or any part of the service covered by the application, if the Commission finds that the applicant is ready, able, and willing properly to perform the service proposed, and (2) that the proposed service, to the extent authorized by the permit, is or will be consistent with the public interest and the national transportation policy . . ." 49 U.S.C. § 1010(c).

■■ The scope of this Court's authority on review of Commission orders is limited to the extent that such orders will not be set aside, modified or disturbed unless they are clearly erroneous, arbitrary or capricious. Allen v. United States, 187 F.Supp. 625 (S.D.Fla.1960); Dixie Ohio Express Inc. v. United States, 263 F.Supp. 993, 999 (N.D.Ohio 1966). While this Court is bound to acknowledge and give weight to the expertise of the Commission, *Dixie, supra,* Nashua Motor Express, Inc. v. United States et al., 230 F.Supp. 646 (D.N.H. 1964), judicial deference to their expertise is not in itself sufficient to sustain

a Commission decision. Campbell 66 Express, Inc. v. United States, 258 F. Supp. 529, 533 (W.D.Mo.1966).

Essentially our task is to ascertain whether the plaintiffs have met their burden of establishing conclusively that the Commission has acted erroneously or arbitrarily and capriciously in granting Brinke's freight forwarder permit pursuant to 49 U.S.C. § 1010(c).

## I  FITNESS OF APPLICANT BRINKE

Reduced to its simplest terms, plaintiffs' first argument is that Brinke's prior conduct renders him unfit for the issuance of a freight forwarder permit, and that the Commission arbitrarily condoned violations of the Act. To this end plaintiffs argue for the synonymous application of the words "properly perform", under § 410(c) of the Act, to the "fit, willing and able" language contained elsewhere in the Act. Accordingly they maintain it is the applicant's burden to refute the import of its past conduct in order to establish its fitness to receive additional authority. This past conduct amounts to alleged unlawful forwarder operations conducted under his broker's permit.

Assuming, *arguendo*, that the phrase "properly perform" contained in § 410(c) of the Act is synonymous with "fit, willing and able" contained elsewhere in the Act, it remains incumbent upon the plaintiffs to demonstrate error by the Commission in its failure to find that the alleged unlawful operations have rendered applicant Brinke unfit within the meaning of the Act such that a freight forwarder permit should not have been granted.

Considering, as we must, the entire record in this proceeding, the facts and circumstances do not warrant a conclusion of error by the Commission in failing to find violations of the Act have rendered Brinke unfit to properly perform as a freight forwarder.

Plaintiffs contend that the record supports a finding that consistently since October, 1964 Brinke has performed as a freight forwarder without a permit under Part IV of the Act authorizing such service.

While Brinke may have been performing services without the requisite authority under Part IV of the Act, he was performing under the authority of an admittedly overbroad but nevertheless valid broker's permit under Section II of the Act.

█ Past violations are merely a factor to be weighed by the Commission in determining present and future fitness; Bradley v. United States, 322 F.Supp. 369 (D.Alaska 1971); Atlanta-New Orleans Freight Co. v. United States, 155 F.Supp. 68 (N.D.Ga.1953), and are not an absolute bar to a grant of operating authority. *Bradley, supra.*

The Commission's grant of authority on applications for permits, licenses or certificates of public convenience and necessity are generally made in two distinct situations. The first is where a proposed service is new and the second is where a service has been previously performed but because of some defect in applicant's existing authority a new application is required. The situation where a proposed service was new was involved in Acme Fast Freight, Inc. v. United States, 281 F.Supp. 314 (D.C. Del.1968), where the court sustained the Commission's findings that Brinke's proposed service met the public interest criteria. It is the second situation that is involved in this case.

In this latter situation the Commission applies a rule to the effect that evidence of past operations may be considered in conjunction with shipper testimony indicating a need for continued service to support a grant of authority. This rule is invoked in situations where the applicant conducted past operations under "reasonable claim of right" or "color of right." Evidence of past operations is to be excluded from consideration only in those situations where such operations could not have been conducted under "color of right."

*See* Home-Pack Transport, Inc., Application For Forwarder Permit, 340 I.C.C. 98; 103 (1971); International Sea Van, Inc., Freight Forwarder Application, 399 I.C.C. 408, 416–417 (1971); Smyth World Wide Movers Inc., Freight Forwarder Application, 337 I.C.C. 721 (1970).

That principle is inapplicable, however, where, as in the instant situation, applicant has been operating under color of right. In the first place, Brinke had the tacit approval from the Commission to conduct the operations which plaintiffs allege render him unfit. Brinke filed a broker application clearly setting out his proposed activities. This application was approved by the joint board and by the Commission. Although the Commission has recognized the discrepancy in Brinke's broker's license, it has never taken any unilateral steps to revoke the license. In one of its earlier reports the Commission stated:

> "[i]t is true as protestants contend that [Brinke's] supporting evidence in the broker application described proposed operations very similar to those proposed in the instant forwarder application. While this showing may be some indication that the Commission may have erred previously in granting Brinke a broker's license, it is not in itself an adequate basis for revoking the license which has been issued. On the contrary it is a substantial support for the proposition that *any alleged unlawful forwarder operations performed by Brinke have been conducted under a misunderstanding of the effect and scope of the license itself . . .*" 326 I.C.C. at 325–326 (1966) (emphasis added)

At the same time the Commission did not tell Brinke to cease his broker's operations immediately but rather stated:

> "[i]t need not, however, require additional discussion to make the point clear to applicant if he is so operating that he may not continue to perform —under a broker's license—the type of operations conclusively held herein to be those of a freight forwarder subject to part IV of the Interstate Commerce Act. Holding by Brinke of both a broker's license and a forwarder's permit in the circumstances evident here would tend to raise difficult interpretive problems in the future and be a source of potential confusion and discrimination among shippers, and, accordingly, we will make it a condition of our grant of authority herein that Brinke request concurrent cancellation of the license issued to him in No. MC–12892." *Id* at 327.

The tenor of the Commission's discussion reveals its recognition that it was responsible for the issuance of an overbroad broker's license and that it could not hold Brinke responsible for that error. Additionally, the Commission provided for Brinke's continued operations pending the issuance of a freight forwarder permit. This continuance reflects the Commission's attitude that Brinke's operations were needed and that no good reason existed for ending them.

In his "Report and Recommended Order on Further Hearing" the examiner, in addition to reviewing the Commission's prior reasoning concerning Brinke's "color of right" operation, noted that the Commission had on October 19, 1966, inadvertently revoked Brinke's broker license, in accordance with Brinke's written request, but had, by a subsequent order, deliberately reinstated it in order that Brinke could continue to operate. In this situation, Brinke had every reason to believe that his operations were being conducted under color of right. The examiner concluded that the fact that the applicant had continued to conduct such operations in no way affects his fitness as previously found.

We have a situation where the Commission's actions have been consistent with the "color of right" which initially arose under Brinke's overbroad broker's permit. This situation is not unlike that in Akers Motor Lines, Inc. v. United States, 352 F.Supp. 606 (W.D.N.C.

1973), where applicant Malone Freight Lines had operated pursuant to a revised certificate which on its face was susceptible of the interpretation that cross-hauling or tacking was permitted. Malone's original certificate, however, was a single grant of radial authority under which such operations were not permitted. Shortly after the revised certificate had been issued the Commission issued a "corrected certificate" purporting to eliminate the cross-hauling or tacking. After much litigation before the Commission and the courts, a final I.C.C. order concluded that the original certificate was a single grant of authority; that therefore it did not authorize tacking but that Malone's twenty-one years of operation under it had been in good faith under color of right so that no cease and desist order should issue.

Plaintiffs, competitors of Malone, challenged this final Commission order contending that all of its tacking operations had been illegal and therefore could not be considered as evidence on the issue of public convenience and necessity. The court flatly rejected the argument holding that where past unauthorized activities have been conducted under color of right, such operations should not have been excluded from the Commission's deliberations. That court stated:

> "With the certificate reading as it does, and with the history of the Interstate Commerce Commission and judicial proceedings such as it was, Malone not only had a clear color of right but a consistent pattern of decisions by the Commission over many years that its color of right was reasonable and in good faith; and the finding of the Commission to that effect in the order now before the court is amply justified on the facts."

*Id.* at 612.

In Dixie Ohio Express, Inc. v. United States, 263 F.Supp. 993 (N.D.Ohio 1966), the court held that the Commission erred in failing to consider applicant's prior service in determining whether the public convenience and necessity required the grant of authority sought where such service had been conducted under "claim of right."

■ It is clear that where prior unauthorized activities have been conducted by an applicant, seeking operating authority from the Commission, such activities must be considered in determining whether the public convenience and necessity require the grant of authority sought when such prior unauthorized activities have been conducted under "claim of right" or "color of right." Bowman Transportation, Inc. v. United States, 211 F.Supp. 354 (N.D.Ala.1962); Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.C.N.H. 1964); R–C Motor Lines, Inc. v. United States, 241 F.Supp. 124 (M.D.Fla.1965).

■ We conclude that the Commission properly considered the evidence of Brinke's past unlawful operations in determining whether there was a need for the authority sought pursuant to his freight forwarder application as such operations were conducted under "color of right." *Akers, supra.* Plaintiffs' reliance on Kulp & Gordon Inc. Ext-Iron and Steel Products, 67 M.C.C. 391 (1956), for contrary position is misplaced since there applicant's unauthorized operations were conducted under a patently impossible construction of its certificate and without justification. Under those circumstances there can be no "color of right" such that unauthorized operations can be considered to determine a need for the proposed services.

■ This Court further concludes that the Commission did not act arbitrarily in "condoning" such activity since it was incumbent upon them to consider these prior operations on the issue of a need for Brinke's proposed services.

## II SHIPPER SUPPORT FOR APPLICANT BRINKE

Plaintiffs also contend that the shipper support for Brinke, adduced at the last hearing, was based upon lower rates

rather than on any bona fide need for forwarder service. Accordingly they assert that the Commission erred in not finding the support was based on rates, and that the Commission should have ignored the same as having no bearing on the question of support for applicant's proposed service. Plaintiffs' contention is ill-founded and reliance upon the authority for support of their position is misplaced.

Plaintiffs maintain that the Commission has rather universally held that the question of rates is not ordinarily a proper issue for consideration in Section 207 proceedings. Plaintiffs, having initiated the instant suit alleging error by the Commission in a § 410(c) freight forwarder proceeding, should be aware that this is not a Section 207 proceeding.

■ Plaintiffs have relied on motor carrier authority for their position. In so doing they have confused fundamental differences in applicable standards of "public interest" criterion of § 410 proceedings and "public convenience and necessity" in motor carrier applications. The "public interest" criterion is not the equivalent of the "public convenience and necessity" test; rather, it is a somewhat less stringent standard which admits of public interest factors other than that relating to the adequacy or inadequacy of existing services. D. C. Andrews & Co. of Ill. Inc., Ext.—Baltimore, Md., 326 I.C.C. 743, 755 (1966).

". . . [T]he term 'public interest' . . . is not a concept without ascertainable criteria, but has direct relation to adequacy of transportation service, to its essential conditions of *economy* and efficiency, and to appropriate provision and best use of transportation facilities, . . ." New York Central Securities Corp. v. United States, 287 U.S. 12, 25, 53 S. Ct. 45, 48, 77 L.Ed. 138 (1932) (emphasis added)

■ While it is true that the question of rates is generally not a proper issue for consideration in motor common carrier applications, the same is not true in freight forwarder proceedings.

Rates are not only entitled to some consideration in § 410 proceedings but arguably are entitled to substantial consideration since the argument that they are not entitled to substantial consideration has been specifically rejected.

"We cannot agree that rates are not entitled to substantial consideration in a freight forwarder application proceeding. The Interstate Commerce Act § 410(c) neither requires a consideration of rates in express terms nor does it proscribe their consideration. 49 U.S.C. § 1010(c). However, the legislative history surrounding the enactment of the 1957 amendment to § 410(d) of the Act and the amendment itself* suggest that Congress desired to leave questions of competition—and so rates—largely to the judgment and expertise of the Commission, subject only to the limited review set out in the Administrative Procedure Act. In addition, the National Transportation Policy includes promoting 'economical service.' [12] Moreover, we cannot agree that the desire for lower rates was the sole motivation of the supporting shippers in testifying in favor of Brinke's application. As has been previously noted, an important consideration was the desire of these shippers to break free of the burdens of private carriage." [*Footnote omitted]

"12. The statement of the National Transportation Policy reads in pertinent part:

It is hereby declared to be the national transportation policy of the Congress . . . to promote safe, adequate, *economical*, and efficient service . . ." (emphasis added)

Acme Fast Freight v. United States, 281 F.Supp. 314 at 321, 322 (D.C.Del. 1968)

Even if rates were not a proper consideration in § 410 proceedings, there is ample shipper support for Brinke.

■ Contrary to plaintiffs' contention that shippers who testified in sup-

port of Brinke did so only on the basis of lower rates, the record in the instant case clearly supports the conclusion that the supporting shippers and receivers testified in behalf of Brinke's proposed service because they found his existing service superior in terms of transit time, tracing service, claims handling and costs.[1]

The record clearly shows that supporting shippers and receivers had substantial grounds, independent of any reliance on lower rates, for giving their support to Brinke. Accordingly, the Commission did not commit error in not finding that shipper support for applicant Brinke rested upon lower rates rather than a need for bona fide forwarder service. Rates were properly considered in the first instance and the need for Brinke's service was adequately established independently of any rate considerations. It is clear that the Commission's decision is consistent with the National Transportation Policy that safe, adequate, economical and efficient service should be promoted.

### III

 Plaintiffs finally contend that the Commission erred in adopting findings of the hearing examiner which would condone present operations under the broker's license and also permit the establishment of a forwarder service where such actions result from the same operations. Plaintiffs maintain an anomalous situation is created by virtue of Brinke's past operations under the broker's permit and his proposed identical operations under the forwarder's permit. This position is, in part, a reiteration of their first contention, i. e., that Brinke's prior conduct renders him unfit for the issuance of a forwarder permit. As hereinbefore decided, Brinke's past operations were conducted under "color of right." To the extent plaintiffs contend the net effect of permitting applicant to perform a forwarder service while he holds a broker's license (and thus pull himself up by his own bootstraps to support the forwarder permit), thereby creating double operating rights where only one should flow, their contention is without merit. Since the Commission's grant of a freight forwarder permit is expressly conditioned upon the cancellation of Brinke's broker's license, there can be no duplicity of licenses and thus no double operating rights where only one should flow. Thus, plaintiffs' final argument is moot under the terms of the Commission's grant of a freight forwarder permit.

For the reasons set forth herein the Final Order of the Commission is affirmed.

---

1. Several shippers stated their support for Brinke's application stemmed from poor service and even denials of service, given them by existing carriers, including freight forwarders. Others testified to the effect that Brinke gave them personalized service and faster deliveries.